MARTHA M. RODGERS, as Sole Surviving Executor, etc., of JOHN C. RODGERS, Deceased, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

First Department, February 3, 1928.

Municipal corporations — streets — action to recover damages based on delay in completion of contract which was caused by acts of defendant — after contract was made, defendant determined to close intersecting street — injunction was granted restraining closing of street which continued for nearly five years — contractor completed all of work except at street intersection — under supplemental agreement, entire amount due was paid contractor — contractor agreed to complete street as soon as injunction was vacated — supplemental contract did not annul original contract or release defendant from damages caused by delay.

Plaintiff's testator entered into a contract with the defendant in December, 1903, to construct an extension to Riverside Drive from One Hundred and Forty-fifth street to Boulevard Lafayette at One Hundred and Fifty-eighth street. At the time the contract was entered into, there was nothing to prevent the completion thereof, under its terms, but thereafter the defendant determined to close One Hundred and Fifty-first street and property owners procured an injunction restraining the closing of the street, but the injunction remained in force from May, 1905, to March, 1910. The result was that the contractor was prevented from completing that part of the contract although it had completed the remainder. Under the terms of the contract, a certain percentage was withheld from the contractor until completion. A supplemental agreement was entered into whereby the defendant paid to the contractor the full amount due for the work then done, and the contractor agreed to complete the remainder of the work as soon as the legal proceedings were terminated.

A consideration of the supplemental contract and also of letters exchanged prior thereto leads to the conclusion that it was not the intention of the parties to cancel the original contract and release the defendant from its liability for delay, but that the supplemental contract was merely a modification of the original contract.

The contractor did not intend to waive his damages caused by prior delay by the acceptance of immediate payment of the retained percentages, and by agreeing to perform at a later date the work remaining to be done which had been restrained by the injunction.

The court does not hold that the defendant is liable for damages or that the plaintiff has not waived his right thereto by acceptance of a modification of the contract, but simply that the supplemental contract did not annul the original contract or operate as a release of liability on the part of the defendant. A new trial may develop evidence that will show that the contractor sought a modification or benefited thereby or otherwise waived his right to damages.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of March, 1926, as resettled by an order entered in said clerk's office on the 16th day of March, 1926.

*Thomas F. Conway* of counsel [*Thomas E. O'Brien* and *William F. Pritchard* with him on the brief; *Conway, Kellogg & O'Brien*, attorneys], for the appellant.

*J. Joseph Lilly* of counsel [*John F. Collins* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the respondent.

MARTIN, J. On October 23, 1912, John C. Rodgers commenced this action to recover $500,000 damages with interest and costs, alleging delays in the performance of work called for by a contract for the construction of an extension to Riverside Drive from West One Hundred and Forty-fifth street to Boulevard Lafayette at West One Hundred and Fifty-eighth street.

The plaintiff's complaint was dismissed at the close of the plaintiff's case. This appeal brings up for review the final judgment entered thereon.

The plaintiff contends that damages were caused through certain delays brought about by injunctions and the alleged carelessness and negligence of defendant in contracting with the plaintiff's intestate and in ordering him to proceed with the work under his contract before it had obtained title by proper legal authority sufficient to permit the closing of West One Hundred and Fifty-first street and West One Hundred and Fifty-fifth street at Riverside Drive.

When the city of New York made the original contract it had a clear right of way. That contract was made on or about December 10, 1903, with John C. Rodgers for the construction by him of a portion of Riverside Drive from West One Hundred and Forty-fifth street to Boulevard Lafayette and West One Hundred and Fifty-eighth street. The contractor was ordered to commence work on May 11, 1904, and did so a few days later.

By the terms of the contract a viaduct or archway was to be constructed at West One Hundred and Fifty-first street so that West One Hundred and Fifty-first street from Broadway to the river would remain open. In the spring of 1905 there was considerable agitation on the part of the property owners in the neighborhood.

of the improvement to eliminate this viaduct or archway and to raise the grade of West One Hundred and Fifty-first street to that of Riverside Drive. To accomplish that result it was suggested that a retaining wall be built across West One Hundred and Fifty-first street. The effect of such a change would be to close a part of West One Hundred and Fifty-first street without providing a means of immediate access to the property owners along the river front on the west side of Riverside Drive.

On October 18, 1904, the local board recommended a change of grade of part of West One Hundred and Fifty-first street which necessitated a change of construction at that location. The local board on May 16, 1905, recommended the closing and discontinuing of part of West One Hundred and Fifty-first street to the United States bulkhead line in the Hudson river, and on May 19, 1905, the board of estimate adopted a resolution favoring the change.

An order to show cause, containing a clause restraining the plaintiff's intestate and defendant from closing West One Hundred and Fifty-first street, was issued out of the Supreme Court on the application of one Gillender on May 19, 1905.

On July 7, 1905, the board of estimate adopted a resolution favoring the closing and discontinuing of West One Hundred and Fifty-first street from the easterly side of Riverside Drive to the United States bulkhead line in the Hudson river. This latter resolution, directing this change was approved by the mayor on July 12, 1905.

The original contract was then modified on August 3, 1905, to include the extra work necessary to make the change. This modification provided as follows:

" Whereas a contract was entered into on the 10th day of December, in the year 1903, by and between The City of New York, acting through the President of the Borough of Manhattan, party of the first part, and John C. Rodgers, party of the second part, for performing the work hereinbefore referred to; and   *   *   *

" Therefore, that the said contract be and hereby is modified in the particulars set forth in the specifications which are annexed hereto, and made part hereof.

" The increase of price of the work set forth in the annexed specification amounts to the sum of $24,241.

" This agreement and specification shall be of the same force and effect as if inserted in and made part of the said original contract executed December 10, 1903, a modification of which it is, and as if inserted in and made part thereof at the time of its execution."

On September 28, 1905, a second order to show cause was issued by the Supreme Court on the application of one Donohue, restrain-

ing the plaintiff's intestate and defendant from constructing a pier or viaduct within the line of West One Hundred and Fifty-fifth street.

On February 6, 1906, the latter injunction order was vacated by consent. On September 26, 1906, an application was made to vacate the injunction order in the action known as the Gillender action. That application was denied.

The plaintiff now contends that the work at West One Hundred and Fifty-first street was delayed from the time of the issuance of the injunction order of May 19, 1905, to March 28, 1910, when it was vacated, and demands damages by reason of such delay.

The claim for damages alleged to have been caused by the Donohue injunction appears to have been abandoned at the trial, or at least no evidence to support it was offered.

The Gillender injunction prevented the performance of a portion of the work only, and although the work was stopped at West One Hundred and Fifty-first street, the plaintiff's intestate continued to work elsewhere.

After considerable correspondence and discussion, the city of New York and the contractor entered into an agreement dated February 19, 1909, whereby it was agreed that all moneys earned up to that time should be paid to the contractor upon executing a supplemental agreement to perform the work covered by the original contract and not completed, and to execute a bond in the sum of $25,000 to complete the work within ninety days after notice of termination of the court proceedings and a direction to proceed. The city thereupon, on March 11, 1909, paid the contractor $181,110.48, being the amount due for work performed including retained percentages not due until the contract was fully completed. The remainder of the work was eventually finished in pursuance of that agreement.

The city of New York contends that upon making this payment the contract was terminated and canceled. The agreement providing for the payment is as follows:

" Whereas, it has been deemed advisable that the contract so far as performing and completing up to the present time be paid for and a certificate be issued by the President of the Borough and a supplemental agreement be entered into for the balance of the work to be done subsequent to the termination of court proceedings.

" It is agreed in consideration of the foregoing facts and of the mutual advantage accruing to the parties hereto that the contractor John C. Rodgers be paid all moneys earned up to the present time including retained percentages upon his executing a supplemental agreement to perform the work covered by the original con-

tract and not completed; and that the said contractor John C. Rodgers execute a bond in the sum of $25,000 to complete the work not finished in said contract within ninety days of the service of a notice of the termination of the court proceedings and a direction that he proceed with the work to completion.

" The said work to be paid for at the prices mentioned in the original contract for the different items not yet completed.

" It is further agreed that all the terms, provisions and conditions of the original contract are made and may be considered as part hereof in so far as they can be considered applicable hereto."

The sole question here involved, therefore, is whether the agreement last referred to did terminate the contract and relieve the city of New York from all liability for damages. The city argues that the contractor by this agreement canceled the contract and waived or released all right to recover damages thereunder. The plaintiff says that the agreement has no such effect.

The law on this subject appears to be stated in the leading case of *McCreery* v. *Day* (119 N. Y. 1) where Judge ANDREWS, writing for the court, said: " The parties by their agreement indorsed on the contract of March 2, 1882, in terms annulled that contract and declared that it should be of no further effect. The claim that the annulment of the contract did not discharge Garrison's obligation under the original contract to pay his proportion of expenditures made by the plaintiffs for the construction of the Pittsburgh, Youngstown and Chicago railroad, between the date of the contract and its annulment, depends on the intention to be deduced from the agreement of annulment, construed in light of the attending circumstances."

Several other cases are cited by the city as authority for the conclusion that when the contract was thus changed the contractor lost his right to recover damages.

The purpose of the agreement must be ascertained from the written instrument itself if it be possible to do so, but where there are additional writings relating to the subject they may be examined to ascertain the intention of the parties at the time of the making of the contract. The plaintiff offered in evidence a very important letter, written by Rodgers at the time the negotiations were in progress, which aids materially in ascertaining the intention of the parties, and which reads as follows:

" The history of the delay at 151st Street is well known to you, having resulted solely from a change in the plans authorized and directed by the City of New York, its officers and agents, and not by any act or neglect upon my part. The acts of the City resulted in an injunction, which still is in effect, and it is very uncertain when

it will be vacated or the matter finally adjusted.   In fact, to me it appears to be a long way off.   *   *   *

" In view of the foregoing, I have to request that you, on behalf of the City of New York, *release* me from my contract to perform and complete the said work under the terms thereof, and that you direct a final estimate to be made and filed with the Comptroller, and that the balance of the work be made the subject of a supplemental agreement, and I am ready to give such bonds as may be reasonably necessary to insure the performance of the work upon my part.

" This request will include the acceptance of the work so far done, so that I may be relieved from indefinitely maintaining and repairing the same; it will mean the reduction or release of my bond, which is greatly in excess of what would seem desirable or necessary to protect the City's interest, and it will entitle me to the payment of retained percentages to which I feel that The City is no longer entitled, and which certainly I never anticipated would be retained indefinitely on account of injunctions, the result of the acts of The City of New York and arising through no fault of mine."

A very significant part of the letter is as follows: " This request is made in the belief that The City and its officers still desire to relieve me from further damages and losses in connection with the work, which must be apparent to you and to anyone else who has observed the situation, and I earnestly hope that some steps may be taken at once to grant this request.   The circumstances in this particular case being so peculiar, and the time when it can be done so indefinite, and the condition of the work being that of substantial completion, are sufficient, it seems to me, to urge upon you the favorable consideration of this request."

The agreement to pay the retained percentages contemplated the completion of the contract and the performance of the remaining work when the city was in a position to proceed with the completion thereof.   The agreement was not a complete cancellation of the original contract; it was an attempted modification thereof, made for the purpose of avoiding further delay in the payment of the money due the contractor.   This agreement dealing with such an important matter is silent with reference to delays or the cause thereof, and nowhere appears to release the city from damages already incurred due to delay.   The correspondence of the parties very forcibly impressed upon the city authorities that the contractor was complaining about the delays and the resulting damages, and that further damages might be avoided by such an arrangement.

We are of the opinion that the agreement in question did not cancel the contract, that it modified it only, and that it is apparent

that the contractor did not intend to waive his damages by the acceptance of immediate payment of the final percentages and his agreement to perform at a later date the work remaining to be done.

We do not hold that the city of New York is liable for damages or that the plaintiff has not waived her right thereto by the acceptance of a modification of the contract or the payment for the additional work. We limit this decision to holding that the agreement relied upon by the city does not annul the contract or release the city from damages incurred by the contractor up to the time of the execution thereof. When the facts are developed upon the new trial, it may be shown that the plaintiff's testator sought the modification or benefited thereby or otherwise waived his right to damages.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.