ROBERT E. BARRINGER; FRANCES B. HAWKINS, as Executrix of the Estate of L. O. HAWKINS, aka LESLIE O. HAWKINS, aka LESLIE OLIVER HAWKINS, Deceased; HOWARD W. CANNON; MARY A. BARRINGER and LAURA HELEN ROOT, Appellants, *v.* E. M. GUNDERSON, Guardian ad Litem of CARLITA RAY, an Infant; IDA ANGELOT RAY; TENNYS MORTENSEN, as Administratrix of the Estate of TRUMAN NYE, Deceased; and WAYNE R. MILLINGTON, Respondents.

No. 4773

TENNYS MORTENSEN, as Administratrix of the Estate of TRUMAN NYE, Deceased; and WAYNE R. MILLINGTON, Appellants, *v.* E. M. GUNDERSON, Guardian ad Litem of CARLITA RAY, an Infant; IDA ANGELOT RAY; ROBERT E. BARRINGER; FRANCES B. HAWKINS, as Executrix of the Estate of L. O. HAWKINS, aka LESLIE O. HAWKINS, aka LESLIE OLIVER HAWKINS, Deceased; HOWARD W. CANNON; MARY A. BARRINGER and LAURA HELEN ROOT, Respondents.

No. 4774

E. M. GUNDERSON, Guardian ad Litem of CARLITA RAY, an Infant, Appellant, *v.* ROBERT E. BARRINGER; FRANCES B. HAWKINS, as Executrix of the Estate of L. O. HAWKINS, aka LESLIE O. HAWKINS, aka LESLIE OLIVER HAWKINS, Deceased; HOWARD W. CANNON; MARY A. BARRINGER; LAURA HELEN ROOT; IDA ANGELOT RAY; TENNYS MORTENSEN, as Administratrix of the Estate of TRUMAN NYE, Deceased; and WAYNE R. MILLINGTON, Respondents.

No. 4775

May 18, 1965 402 P.2d 470

[Rehearing in Appeal No. 4773 denied June 14, 1965]

*Hawkins, Cannon & Hawkins,* of Las Vegas, for Robert E. Barringer; Frances B. Hawkins, as executrix of the estate of L. O. Hawkins; Howard W. Cannon; Mary A. Barringer and Laura Helen Root.

*E. M. Gunderson,* of Las Vegas, for E. M. Gunderson, guardian ad litem of Carlita Ray.

*Vargas, Dillon, Bartlett & Dixon,* of Reno, for Ida Angelot Ray.

*Myron E. Leavitt,* of Las Vegas, for Tennys Mortensen and Wayne R. Millington.

## OPINION

By the Court, BADT, J.:

These three appeals, which, although they have some points of law in common, for the most part raise different questions of law, were for convenience consolidated for argument. They were separately and elaborately briefed and separate counsel appeared for the respective appellants, and respondents.

The history of this matter appears in the case of Gunderson v. Barringer, 76 Nev. 133, 350 P.2d 397. It appears therefrom that after the will of Carl Ray, deceased, was admitted to probate, Barringer filed a petition in the estate proceedings claiming one third of the estate as a pretermitted heir. That petition was granted and this decision was sustained on appeal. In re Carl Ray, 69 Nev. 204, 245 P.2d 990. Thereafter, Ida Angelot Ray, the widow of Carl Ray, commenced an independent action for the specific performance of an antenuptial agreement under which the decedent agreed to devise certain property to her in trust. This contract provided that the decedent would make a will wherein he would bequeath all his property to a trustee with a provision that his widow would receive one half the net proceeds of the trust estate. The agreement further provided that the provisions thereof would be in lieu of any other claim against decedent's estate. The decedent did execute his will in compliance with said antenuptial agreement, and in addition provided that the remaining one half of the net proceeds of the trust was to go to Carlita Ray, the minor child of decedent and Ida Angelot Ray. This contract was held valid. Barringer v. Ray, 72 Nev. 172, 298 P.2d 933.

During the administration of the estate and pursuant

to the decision in the case of In re Carl Ray, supra, a one-third interest in the Professional Building in Las Vegas (the chief asset of the estate in Nevada) was conveyed by the estate to Barringer. Thereafter, upon final distribution of the estate, the remaining two-thirds interest in said land passed in trust to the trustees named in the will.

It was the obvious intention of the testator that all his estate (except for certain minor bequests) was to be distributed to the trustees named in his will in trust for his widow and minor child, who were to receive in equal shares the net proceeds therefrom all consistent with the covenants contained in the antenuptial agreement. The fact that Barringer would be awarded one third of the estate before the commencement of the trust was not contemplated by the testator at the time he executed his will, nor was Mrs. Ray's antenuptial agreement brought to the attention of the court when it ordered distribution to Barringer. The foregoing presents for determination the question whether Barringer is entitled to retain one third of the entire estate which was distributed to him as aforesaid or whether he is entitled as a pretermitted heir to share only in that portion of the estate which the decedent could without restriction dispose of by will.

The decedent because of the antenuptial agreement was legally empowered to dispose of only one half of his estate by will and the proceeds from the other half contractually belonged to his widow. The first half he was free to dispose of as he saw fit and he made his minor daughter the beneficiary of this half. As a pretermitted heir, under the laws of intestate succession, Barringer would be entitled to one third of that half of the estate which was not limited by Mrs. Ray's antenuptial agreement.

An amended complaint for declaratory judgment was filed in the lower court, in which the foregoing facts are alleged, which sought a declaration of the rights and interest held in the Professional Building by each of the parties named herein.

In Ray v. Barringer, 73 Nev. 212, 314 P.2d 378, this court stated: "Because of unusual developments in the probate proceedings, the interests of the minor quite

clearly demand attention and a determination of her rights under present circumstances should be had."

Barringer and his privies claim no interest in the trust estate, but they do claim the one-third interest in the Professional Building which was distributed to Barringer as aforesaid. In Gunderson v. Barringer, 76 Nev. 133, 350 P.2d 397, we stated that if the interest of Barringer and his privies in said building was improperly acquired through a mistake of fact, an action to determine such matter would be proper. This is the obvious purpose of the present action, which is now involved in appeal No. 4773, Barringer, et al. v. Gunderson, et al.

After a trial in the court below the court made findings that because of the antenuptial agreement only one half of the Professional Building should have been included in the inventory of the probate proceedings of the estate of Carl Ray, deceased; that therefore Barringer should have received only one third of the one half of the property subject to the probate proceedings, to wit, one third of the one half of such property, or a one-sixth interest in the Professional Building. The lower court stated in paragraph 9 of its findings that the court (Judge McNamee) in ordering distribution to Barringer of a one-third interest in the Professional Building "acted on a state of facts then known by it at the time of the hearing and ordered distribution of a one-third interest in the estate of Carl Ray, deceased, to be distributed to Robert E. Barringer." Pursuant to said finding the trial court concluded that Barringer and his privies were entitled to only a one-sixth interest in the Professional Building and that therefore by receiving one third thereof, hold one sixth in trust for the benefit of the trust estate and must account to the trustees for one sixth of the rents and profits received from the said Professional Building. It is this part of the judgment that Barringer and his privies seek to have reversed by the appeal in Case No. 4773.

The antenuptial agreement under which Ida Angelot Ray claims an interest in the Professional Building provides: "That the first party [Carl Ray] shall make and keep in existence a valid will, wherein and whereby all of his property will be bequeathed to a trustee and said

Will shall provide that the second party [Ida Angelot] shall receive one-half ($\frac{1}{2}$) of the net proceeds of the said trust estate, upon the condition that the second party shall have lived with first party as his wife until the date of his death and during said time has been a loyal, devoted wife to him."

By its findings, conclusions, and judgment the trial court ordered distributed to Ida Angelot Ray forthwith a one-half interest in the Professional Building. It is from this part of the judgment that Gunderson, as guardian of Carlita Ray, has appealed in Case No. 4775 and he seeks a reversal because he maintains that the provisions of the antenuptial agreement quoted above give Ida Angelot Ray no corpus of the estate, but only one half of the net proceeds of the trust estate and only for the duration of the trust.

The will of Carl Ray provides that Truman Nye, the nephew of Carl Ray, receive the sum of $100 per month for and during the term of the trust created by said will. The term of such trust was fixed in the will at 20 years. In the trial below the court determined that this bequest was to Truman Nye for his lifetime only and terminated upon his death and that therefore Tennys Mortensen, the administratrix of Truman Nye, deceased, was not entitled to any payments after the death of Truman Nye. It is this part of the judgment that Tennys Mortensen in Case No. 4774 seeks to have reversed on appeal.

### APPEAL No. 4773

The court below in dealing with the claim of Barringer that he was entitled as a pretermitted heir to a full one-third interest in the Professional Building in Las Vegas (the main Nevada asset of the Carl Ray estate) despite the fact, as later developed, that the testator was so limited by contract that he had only a one-half interest therein subject to his testamentary disposition, first assayed the situation as follows:

"During the course of this trial testimony was sought to be admitted from two attorneys who discussed the will with the testator during his lifetime. One of those attorneys, Paul Angelillo was also originally the executor of the estate. The other attorney, Henry Bodkin who

once represented Ray during his lifetime, and Angelillo as well, testified as to their impressions of the intention of the testator. It developed that neither one of them actually had the will executed in final form in their presence and that Carl Ray himself to some extent prepared part of the will and had the same executed independently. The value of the testimony of both lawyers, while respected for its integrity, is comparatively valueless and the court disregards such testimony preferring to refer to the will itself to ascertain to the best of its ability the true intention of the testator. The activities of the testator in going from one lawyer to another and then ultimately preparing in effect his own will, were eccentric and extremely costly to those whom he professed to love so much.

"The Honorable Frank McNamee sitting as District Court Judge, Department I, in the early determination of Barringer's rights as pretermitted heir directed that Barringer be entitled to one-third of the estate. At that time it had not been revealed to Judge McNamee that there was an ante-nuptial agreement between the deceased and Mrs. Ray. Consequently Judge McNamee could act only upon the facts and state of the record then before him. Therefore his determination of the extent of the one-third interest was based upon the entire estate, not that based upon the estate not otherwise limited by contract, as per Section 9882.297 [N.C.L. 1931–41 Supp.].

" '9882.297. DESCENTS AND DISTRIBUTIONS, MANNER–WHEN TO ESCHEAT. 297. When any person having title to any estate, which is his or her separate property, not otherwise limited by contract, shall die intestate as to such estate, it shall descend and be distributed, subject to the payment of his or her debts, in the following manner:

" 'First—If there be a surviving husband or wife, and only one child, or the lawful issue of one child, one-half to the surviving husband or wife, and one-half to such child or issue of such child. If there be a surviving husband or wife, and more than one child living, * * *, one-third to the surviving husband or wife, and the remainder in equal shares to his or her children, * * *.'

"The judgment of the first case was the *right* of Barringer to participate. The *extent* of the participation merely flowed from the right established. Thereafter the antenuptial contract was propounded and affirmed. The extent of Barringer's participation diminishes but not his right.

"The intention of the testator being that his widow receive one-half of his estate and the Supreme Court of Nevada having held that this provision in the will was in conformity with their contract, Ida Angelot Ray is entitled to one-half of the entire estate."

The court then disposed of the defense of estoppel and laches asserted by Barringer. As to Carlita, the minor daughter, the court said that: "[T]he records are replete with the efforts of those representing the infant throughout the years to seek relief on her behalf; nor can the defense of estoppel be applied to her. As to Ida Angelot Ray [the widow] estoppel was litigated in the ante-nuptial litigation and therefore cannot be raised now." Barringer v. Ray, 72 Nev. 172, 177–181, 298 P.2d 933, 935, where the issue of estoppel as against Ida Angelot Ray was discussed at length. That issue, so far as concerns the present appeal is res judicata.

We are in accord with the treatment by the court below of the issues raised in this appeal and find no error.

The appellants in Barringer v. Gunderson, No. 4773, also argue that Ida Angelot Ray received no interest in the corpus of the trust estate. However this issue is dealt with in Gunderson, Guardian v. Barringer, et al., Appeal No. 4775, and we postpone the discussion of that issue to our treatment of that appeal.

APPEAL NO. 4774

Tennys Mortensen, as administratrix of the estate of Truman Nye, deceased, and Wayne R. Millington are the appellants in this case. Gunderson, guardian of Carlita Ray, an infant, Ida Angelot Ray and Barringer and his privies are the respondents. Appellants appeal from the holding of the court below:

"That Tennys Mortensen, as administratrix of the Estate of Truman Nye, deceased, is not entitled to have or receive any part of the property which is legally or equitably part of the trust estate of Carl Ray, deceased, and is not entitled to receive any part of the rents, issues, profits or other income thereof."

The issue for determination on this appeal is whether the bequest of $100 a month to Truman Nye ceased upon his death or whether it continued for the benefit of his estate.

Under section 1(A) of provision seventh, one half of the net income of all the property of the estate (but not less than $500 a month) was payable monthly to the testator's widow for the entire term of the trust. Out of the other half of the income $100 a month is payable to the testator's daughter Carlita Nancy Ray, and $100 a month to the testator's nephew Truman Nye. See Barringer v. Ray, 72 Nev. 172, 176, 298 P.2d 933, in which we traced at some length the provisions of the will and said inter alia: "The testator declared the primary purpose of the trust to be 'to provide for my said wife and adopted child * * *.' Alternate provisions were made in the event of the death of the testator's wife and in the event of the death of the testator's daughter." No alternate provision was made in the event of the death of Truman Nye.

It is to be noted that the expressed purpose of the trust was to provide support first for the settlor's family, which purpose the trust has failed to attain.

With regard to this type of claim, 48 Cal.Jur.2d, Trusts § 127, at 769, states:

"* * * But a provision for payment of trust income to the beneficiary in person shows an intention to limit the gift to his life, and precludes payment to his estate following his death before termination of the trust.

"* * * Similarly, where the death of an income beneficiary does not terminate the trust, his share of the income, if not otherwise provided for, goes to the trustor or his estate as property undisposed of by the trust instrument."

See also First Nat. Bank of Chicago v. Cleveland Trust Co., 308 Ill.App. 639, 32 N.E.2d 964, where after

quoting at length from Routt v. Newman, 253 Ill. 185, 97 N.E. 208, the court concluded:

"* * * We think it was clearly intended by the testator that monthly payments of income should cease upon the death of a beneficiary, and that no interest in any of the net income passed to the personal representative of Lillian P. Ludlow upon her death. The Routt case sustains this conclusion."

See also Union National Bank of Pasadena v. Hunter, 93 Cal.App.2d 669, 209 P.2d 621. It is true that in these cases the trust provisions more clearly indicated a gift to the named beneficiary in person than does the trust agreement here.

Carl Ray died before Truman Nye, but at Nye's death the 20-year period of the created trust had not yet expired. The general rule (see Annot. 112 A.L.R. 581) that in the absence of evidence of an intention to the contrary a vested gift of income to be paid to a named beneficiary for a definite or ascertainable period of time is not divested by the beneficiary's death before the termination of the period prescribed for the payments but go to his estate during the remainder of the period, is stated at page 587 of the cited annotation to be subject to the modification that it may be limited to the life of the beneficiary by evidence of an intention to that effect in the will or other instrument. The gift over in the case of the other beneficiaries should they die prior to the termination of the trust, in contrast to the failure to make a gift over in the event of Truman Nye's death sufficiently evidences the intent of the settlor to limit the income to Nye alone and to preclude Nye's estate from claiming upon the death of Nye before the termination of the trust.

Nor are we convinced, as urged by this appellant, that Truman Nye's interest became vested upon the death of Carl Ray. We think that the express terms of the trust created by the will testifying to the main purpose of the testator to provide for his wife and child make the bequest to Truman Nye contingent to the accomplishment of that purpose. Reference is made to paragraph

(A) (2) of Section I of the will creating the trust: "My trustees are hereby directed that the provisions of this trust shall first be carried out as to my wife, IDA ANGELOT RAY, [and] my daughter, CARLITA NANCY RAY, * * * and that *then* the provisions as to the said TRUMAN NYE shall be put into effect. In other words, the primary purpose of the trust is to provide for my said wife, and adopted child, * * *." (Emphasis supplied.) It is clear then under the will that the legacy to Truman Nye was dependent and contingent upon the carrying out of the trust benefits to Ida Angelot and Carlita, the wife and child. If those prior provisions were not carried out, the Truman Nye legacy would not come into being.

In other words, the Truman Nye legacy was contingent. We have therefore rejected the contention that the bequest to Nye gave him a vested interest and affirm the conclusion reached by the trial court. The trial court was correct in holding that the administratrix of the estate of Truman Nye was not entitled to participate.

## Appeal No. 4775

On June 23, 1958, Russell Taylor, the guardian of Carlita Ray, an infant, instituted the action involved in this particular appeal by a complaint for a declaratory judgment praying for a declaration of rights and interests in the estate of her deceased father Carl Ray. She specifically prayed "for a Declaratory Judgment declaring the rights and interests of the various Defendants herein in and to the trust estate created and established by the Last Will and Testament of CARL RAY, Deceased * * *," be determined.

Certain of the defendants moved to dismiss the complaint and an "Order Dismissing Action" was entered upon their motion. Russel Taylor, guardian as aforesaid, appealed. E. M. Gunderson was substituted for Taylor on the appeal. This court denied a motion to dismiss the appeal. Taylor v. Barringer, 75 Nev. 409, 344 P.2d 676. On the appeal on the merits this court held that the complaint below stated a cause of action (failure to state a cause of action being the main ground of appeal) and

reversed. Gunderson v. Barringer, 76 Nev. 133, 350 P.2d 397. There we said:

"As must be apparent from the foregoing, it was the intention of the testator that all of his estate (except for certain minor bequests) was to be distributed to the trustee or trustees named in his will in trust for his widow and minor child who were to receive the net proceeds therefrom in equal portions, all consistent with the covenants contained in the antenuptial agreement. The existence of [a son,] Barringer, and the fact that he would be awarded one third of the estate before the commencement of the trust was not contemplated by the testator at the time he executed his will, or brought to the attention of the court when it ordered distribution to Barringer as a pretermitted heir to one third of the estate. In other words, after the determination of the validity of the antenuptial agreement and the legal effect thereof, was Barringer then entitled to retain one third of the entire estate, or was he entitled as a pretermitted heir to share only in that portion of the estate which the decedent could without restriction dispose of by will?

"If the court in determining that Barringer as a pretermitted heir was entitled to one third of the estate acted under mistake of fact, then in the absence of laches, waiver, or other legal defense any part of the estate improperly received by him, could be impressed with a trust for the benefit of the trustees under the will. Villalon v. Bowen, 70 Nev. 456, 273 P.2d 409. If such could be accomplished, the relative interests of the minor child and the widow, or at least of the minor child, would be materially affected.

"This court in referring to the interests of said minor child stated in the case of Ray v. Barringer, 73 Nev. 212, 314 P.2d 378: 'Because of unusual developments in the probate proceedings, the interests of the minor child quite clearly demand attention and a determination of her rights under present circumstances should be had.' "

Thereafter the trustees under the will commenced an action for a declaratory judgment to determine the rights and interests of the various defendants in the trust estate. Id. 136.

Although neither Barringer nor his successors in interest have ever claimed any interest in the trust estate, they do claim a one-third interest in the Professional Building. Id. 137, where we said: "If their interest in said building or any part thereof was improperly acquired through a mistake of fact, an action to determine such matter would be proper. Villalon v. Bowen, supra." The order dismissing the action as to defendants Barringer and his successors was reversed, with directions to the trial court to permit the appellant to amend the complaint so as clearly to allege that the declaration of rights sought pertains to the real property in its entirety and not to just that part thereof held by the testamentary trustees.

Gunderson's appeal insists that the term "net proceeds" as used in the antenuptial agreement between Ida Angelot Ray and Carl Ray refers only to net income and does not include the corpus of the real property; that the right of Ida Angelot Ray is to have one half of the income of the trust distributed to her by the trustees, subject only to her proportionate share of the allowable costs of administration of the trust; that this conclusion should have been included in the findings of fact in the lower court and that it was error for the court to reject his proposed amendments to the findings accordingly.

This contention on the part of appellant grows out of the following language used by the trustor in the antenuptial agreement: "1. That the first party shall make and keep in existence a valid will, wherein and whereby all of his property will be bequeathed to a trustee and said Will shall provide that the second party shall receive one-half (½) of the net proceeds of said trust estate, * * *.

"3. It is further agreed, that the provisions as aforesaid to second party, in accordance with the foregoing Paragraphs, shall be so given and set over to said second party as a pecuniary provision for her, in lieu and in bar of any and all right or claim of dower, in and to any and all of the [property of the second party] to which * * * [she] might become entitled, * * * as wife or widow, and in lieu of any right * * * to apply to the

Court for a family allowance or support money * * * [and] that all * * * rights [so waived] include [statutory as well as common-law rights]."

Appellant emphasizes the use of the words "net proceeds" in paragraph 1 above quoted and the use of the words "pecuniary provision" in the third paragraph above quoted as indicating the trustor's intention that the corpus of the property should not pass, but only the income.

The trial court's opinion treated the matter as follows: "The language of the ante-nuptial agreement and as contained in the will clearly indicates to the court that the testator meant by the word 'proceeds' the entire corpus including income."

The will, made some three years after the antenuptial agreement, and which we said in Barringer v. Ray, 72 Nev. 172, 298 P.2d 933, substantially carries out the provisions of the agreement, contains the following language: "EIGHTH: After the expiration of twenty years from date of my death, distribution of the proceeds of said Trust, including the corpus, principal, accumulated income, rents, issues and profits, shall be made by my said Trustees to the beneficiaries in said Trust mentioned and designated in Section I(1)(B)(d) hereof, and this Trust shall cease and determine." The word "proceeds" was here clearly defined to include the corpus of the trust as well as the income therefrom. The use of the word "net" in the term "net proceeds" as used in the antenuptial agreement has no particular significance. Gross proceeds could in no event be entirely subject to distribution, as they would be subject first to costs of administration.

Appellant contends that there is no precedent authorizing the construction of an instrument by recourse to words used in a *later* instrument.

Certain cardinal rules of construction of instruments are so well recognized as to require no citation of authority. The first of these to which all others are subordinate is to ascertain the intention of the parties. If such intention is clear from the instrument itself, it requires no

construction. Otherwise, in order to ascertain the intention of the parties the language of the agreement should be considered in the light of the attendant and surrounding circumstances. The court should place itself as nearly as possible in the situation of the parties in seeking the true meaning and the correct application of the language of the contract. It is said in 1 Williston on Contracts (Rev.Ed.) § 47: "It is not necessary that a promise should within itself be certain if it contains a reference to some document, transaction, or other extrinsic facts from which the meaning may be made clear." In Rodgers v. City of New York, 222 App.Div. 564, 226 N.Y.S. 485, 489 (under facts far different but directly in point on the rule decided), the court held that the intention of the parties as to the purpose of the agreement could be determined by reference to additional *later* writings relating to the subject. This seems reasonable as applied to the present case in which Carl Ray and Ida Angelot entered into an antenuptial agreement in which Carl Ray agreed to make and keep in effect a will whereby, among other things, all his property would be bequeathed to a trustee and which would provide that Ida Angelot receive one half of the proceeds of said trust estate, and in which he did execute such will and defined proceeds to include the corpus of the property.

We hold that the assignment of error in the action of the trial court's consideration of the language of the will in construing the language of the antenuptial agreement is without merit.

It has been noted that Carl Ray fixed the term of the trust as 20 years. Although we have said that his will substantially carried out the terms of the antenuptial agreement, in this respect it did not. The antenuptial agreement made no provision for a creation of the term fixing the life of the trust, or that it should have any term, or that it should have a limited term.

We thus proceed to the contention of appellant that it was error for the trial court to accelerate the trust. The court's action in accelerating the trust was based upon

the frustration of its purpose, the support of the trustor's wife and child. In 96 C.J.S., Wills § 1060, at 694 et seq., it is said:

"The failure of a testamentary trust because of invalidity or otherwise does not render invalid other provisions of the will which are not affected by the trust. In the absence of a manifest intention or a provision in the will to the contrary, the property included in a trust will pass to the heir or next of kin of the testator, or to his residuary devisee or legatee, as the case may be, where the trust is invalid; * * * where the object of the trust [family support] becomes impossible of performance; * * *. If a trust fails, it has been held, a court has no power except to enforce a reversion. Whether or not a trust has failed is to be determined by the primary or dominant purpose of the testator, and a trust itself does not fail if only the incidents of its description or execution fail."

It was made clear to the court below that the main purpose of the trust, the support of the trustor's family, had not been met by the trust and that a termination of the trust and distribution of the property would better serve the desire of the testator. It also appeared to the court below that the will did provide a plan for final distribution of the property (although it fixed the time of such distribution upon the termination of the trust at the expiration of 20 years, a provision not appearing in the antenuptial agreement). Support of the family ($500 a month to the wife and $100 a month to the minor child, plus a distribution of excess of income each month following monthly accountings has not been available. The $20,000 trust fund provided for from the income of the properties has not been realized due to a lack of funds. The income provision for the daughter existed only for a short period of time. Support of the wife was almost entirely the result of proceeds of the Wyoming property.

It is our opinion that the acceleration of the terms of the trust was within the judgment and discretion of the court under the existing facts; that there was no abuse

of such discretion and that the order accelerating the termination of the trust should not be disturbed by this court. Wilce v. Van Anden, 248 Ill. 358, 94 N.E. 42, 46.

There remains for determination the action of the court in distributing the trust property one half to the widow Ida Angelot Ray; one third of one half, or one sixth, to Robert Barringer; one third of one half, or one sixth to the testator's daughter Carlita Ray, and "the balance of one third thereof shall fall into the residuum," in which Carlita will participate. Appellant Gunderson, as guardian of Carlita, contends that she is entitled to an undivided one-third interest in the trust property.

As we read the written opinion and the findings of the trial court, appellant's view may be reconciled by a proper understanding of the situation resulting from the court's decree, except that we see no present necessity for creating a residual fund. If, as the result of the judgments rendered by the court below as here affirmed, Ida Angelot Ray receives an undivided one half, thus fulfilling the expressed desire of the parties to the antenuptial agreement of the testator and in his will, and Carlita receives an undivided one third, partly resulting from the antenuptial agreement and the will but as affected by our intestate statute and by our pretermitted heir statute, and the privies of Robert E. Barringer receive an undivided one sixth in accordance with the prior holdings of this court, but such distribution be made subject to the assessment of costs, attorney fees, referees' fees and any other proper charges against such respective interests, a full and proper result will be accomplished. Thus, with the exception of the implied provision for the creation of a residuum or residual fund or account, the distribution as ordered by the court below has our full approval.

(All reference herein to interests in and division of the trust property has reference particularly to what has been referred to throughout as the Professional Building, being Lots 7, 8, and the E½ of Lot 6 of Block No. 35 in Clark's Las Vegas Townsite in the City of Las Vegas,

County of Clark, State of Nevada, though it of course indicates all other property, assets and moneys in the hands of the trustees.)

In Appeal No. 4773 Barringer, et al. v. Gunderson, Guardian, et al., the judgment is affirmed with costs to the respondents.

In Appeal No. 4774, Mortensen as Administrator of the Estate of Truman Nye, Deceased, and Millington v. Gunderson, Guardian, et al., the judgment is affirmed with costs to respondents.

In Appeal No. 4775, Gunderson, Guardian v. Barringer, et al., the judgment is affirmed, with elimination of the implied creation of a residuum, which will leave the judgment otherwise intact by distribution of one half of all the property to Ida Angelot Ray, one third thereof to Carlita Ray, and permitting one sixth thereof to remain vested in the successors of Robert E. Barringer but subject to their reconveyance to the trustees of the undivided one-sixth interest in the Professional Building pursuant to the prior judgments of the court below, affirmed by this court, and subject to their accounting for one sixth of the rents, issues and profits of the Professional Building received by them.

Determination of the interest of Wayne R. Millington, who claims a lien against the interest of Barringer and his privies, and the claim of Frances B. Hawkins, as executrix of the estate of L. O. Hawkins, deceased, and Howard W. Cannon, claiming under a deed or a trust deed from Robert E. Barringer, must be asserted against the interest of Barringer as limited to an undivided one-sixth interest. In none of the three appeals does it appear that there has been an adjudication of such lien or claims in the court below and they are not involved herein. In Appeal No. 4775 each of the parties will pay his own costs.

It is evident that further accountings and proceedings must be had. This case is remanded with directions to the court below to proceed with such accountings and such allowances of fees as may be proper and the assessment of costs and fees against the respective interests

as may appear proper, and not contrary to the views herein expressed.

THOMPSON, J., and BOWEN, D. J., concur.