GREAT AMERICAN AIRWAYS, INC., A NEVADA CORPORATION, APPELLANT, *v.* AIRPORT AUTHORITY OF WASHOE COUNTY, RESPONDENT.

No. 17248

October 7, 1987                                    743 P.2d 628

*Bowen, Swafford, Hoffman, Test & Dickey,* Reno, for Appellant.

*Erickson, Thorpe, Swainston & Cobb,* Reno, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

Great American Airways (Great American) sued the Airport Authority (Authority), claiming damages under theories of negligence and breach of contract. The trial court dismissed Great American's complaint on a Rule 41(b) motion at the conclusion of plaintiff's case. This appeal ensued.

On February 27, 1983, while attempting to take off from a runway at Reno-Cannon International Airport, a Great American jet allegedly struck a large chunk of ice, damaging the airplane's nose wheels, fuselage and engines.[1] The pilot landed safely and the passengers were transferred to another airplane. The record indicates that the weather that morning was dry and the runway was clear of snow and slush. In addition, the Authority had inspected the runway at least once during the two hours prior to takeoff.

Great American contends that it had proved both its claims. We agree with the trial court's disposition of the tort claim, but conclude that the court erred in dismissing the claim for breach of contract.

The written agreement between Great American and the Authority provided, in pertinent part, as follows:

### ARTICLE 9
### OBLIGATIONS OF AUTHORITY

*Section 9.01—Operation and Maintenance of the Authority*
    A. Authority agrees, except as herein otherwise provided, that it will, during the term of this Agreement, operate and maintain the Authority facilities in a safe, workable, clean, and sanitary condition, and in good repair and *free from obstructions,* including such clearing and removal of snow that is reasonably necessary to permit operations and as soon as it is practical for Authority to do. Authority agrees to maintain and operate the Authority facilities so that they are suitable for Lessee [Great American] to use in its air transport operations (emphasis supplied).

The trial court apparently construed this provision as requiring the Authority to remove obstructions from the runways to a degree "reasonably necessary to permit operations." Accordingly, Great American was denied relief on the basis that the Authority had, in fact, maintained the runway in a condition sufficiently free of obstructions to permit Great American's use of the runway.

---

[1]The parties have stipulated that the amount of the damage, if compensable, is $46,910.94.

When, as here, a trial court has interpreted a contract solely from its written terms, this court may apply a plenary review without deference to the lower court's interpretation. Caldwell v. Consolidated Realty & Management Co., 99 Nev. 635, 668 P.2d 284 (1983).

The preeminent rule of construction is to ascertain the intention of the contracting parties. Barringer v. Gunderson, 81 Nev. 288, 302, 402 P.2d 470, 477 (1965). If that intention is clear from the text, no construction is required, *id.*, 81 Nev. at 302-03, 402 P.2d at 477, and this court is bound by the language of the agreement, Watson v. Watson, 95 Nev. 495, 596 P.2d 507 (1979).

As previously noted, no extrinsic evidence was taken to shed light on the intent and meaning of section 9.01 of the contract. When read in its entirety, the phrase "that is reasonably necessary to permit operations" clearly appears to modify only the Authority's responsibility concerning the clearing and removal of snow. In drafting the contract, the Authority did not specify that it would keep the runways "reasonably" free from obstructions. To the contrary, the requirement to maintain the facilities "free of obstructions" is unqualified and consistent with the Authority's contractual obligation to maintain its facilities "so that they are suitable for Lessee [Great American] to use in its air transport operations." By modifying the Authority's express agreement to keep its facilities "free of obstructions," the district court effectively revised the agreement while professing to construe it. This the court was not free to do. Geo. B. Smith Chemical Works v. Simon, 92 Nev. 580, 582, 555 P.2d 216, 217 (1976).

This reading of the contract does not lead to absurd results. When runway obstructions cause damage or injury, the burden must fall on someone. If the Authority had intended that Great American bear such losses, it could have so specified. Since it failed to do so, we must assume that the Authority willingly assumed the risk of loss, based upon such considerations as an effective preventive maintenance program, insurance, and adequate charges to the users of its facilities.

Although Great American presented substantial evidence indicating that ice caused the damage sustained by its aircraft, the 41(b) dismissal precluded consideration of the Authority's evidence, if any, to the contrary. A new trial is therefore required on the issue of contract liability.

The judgment of the district court is affirmed as to Great American's negligence claim, but reversed as to its claim for breach of contract. The matter is remanded to the district court for a new trial consistent with this opinion.

YOUNG and MOWBRAY, JJ., concur.

SPRINGER, J., dissenting:

The Airport Authority was sued by Great American for damage incurred by one of its airplanes when it struck a "chunk of ice" on the runway. Great American's tort action was dismissed, but the majority permits it to pursue its claim for damages in the form of a contract action.

With the negligence action out of the picture, the Authority is now being held liable as an insurer, independent of any lack of care or other fault on its part. This result is inconsistent with the terms of the contract and is based upon an inappropriate interpretation of the contract document.

The cardinal rule in interpreting contracts is to follow the intention of the contracting parties. Barringer v. Gunderson, 81 Nev. 288, 302; 402 P.2d 470, 477 (1965). To me it is obvious, from a reading of the contract, that the parties did not intend for the Authority to be an insurer, indemnifying its lessee for all losses that might result from objects found on the premises.

If the tort claim had been sustainable, some fault on the part of the Authority would have to have been shown. Apparently the airline could not establish that the Authority had been at fault either in placing the object on the premises or in unreasonably permitting it to remain where it was. No one knows how the object, the ice ball, got where it was or how long it remained there. It could have been dropped from Great American's airplane; it could have been blown on to the runway by other aircraft in the process of landing or taking off. There are any number of ways in which the ice could have ended up on the runway, and any number of possible causes of the damage to Great American's property—including lack of vigilance on the part of the flight crew. The most probable origin of the damages was a simple accident in its purest form, with no one being at fault. It is hard for me to see under the circumstances how the Authority, in justice or fairness, can be held liable for property damage under a theory of breach of contract.

The strained construction of the contract found in the majority opinion causes great and unanticipated liability to be thrust upon the Authority. I can find nothing in the Authority's agreement to keep the "facilities" free from obstructions that would make it an insurer against all damages incurred as a result of objects lying about the premises.

The obstruction in question was a chunk of ice about the size of a baseball. Because I do not think a small ice-chunk can be called an "obstruction," and because the majority's position incorrectly converts the Authority into an insurer, liable without fault, I dissent.

As noted, the Authority should not be held liable on the basis of its failing to keep runways free from what has been miscalled

an "obstruction." An obstruction is an impediment, a barrier. According to my dictionary, to "obstruct" is to block or close, to impede or retard. It is possible, I suppose, for a large snow bank to obstruct, block, or close a runway, but not a softball-sized "chunk of ice." So, even if Great American has an absolute duty to keep the "facilities" (which I assume means the whole airport, including terminal facilities as well as runways) "free from obstructions," no contract liability can result from the Authority's supposed failure to keep the facilities clear from non-obstructive detritus like ice chunks.

Under the majority opinion, the Authority will henceforth be responsible as an insurer for injuries caused by a miscellany of objects that might be found within the confines of the "facilities." In the widest interpretation of the majority position, no-fault liability could result from injuries sustained by any of the lessees, lessees' agents or lessees' invitees who might be injured, independent of any negligence on the part of the Authority, by encounters with such "obstructions" as pavement ice, carelessly placed luggage, discarded fast-food containers, and bubble-gum splotches.

As I read the contract obligation, to keep the facilities "free from obstructions," the parties simply had in mind the duty of the Authority not to block (or obstruct) runways in such a manner as to retard air traffic. If it violated this agreement, the Authority could be held contractually liable for monetary losses. It is, of course, possible that some kind of barrier could be so negligently placed as to create tort liability on the part of the Authority, but this is not an issue in this case. The Authority does not appear to have shied away from its obligation to keep its runways "free from obstructions," for there were no barriers on the runway on the day in question.

I disagree with the majority's position that the Authority "willingly assumed the risk of loss." I do not see the Authority as having guaranteed to keep runways free at all times from every little piece of ice, nor do I see it as having failed in any way to remove "obstructions" from the facilities.

The trial court was right in denying a contract claim under these circumstances. I would affirm the district court's judgment.

I concur: GUNDERSON, C. J.