OPINION
 

 Per Curiam:
 

 This is a case of first impression in Nevada. This case involves visitation rights to three and one-half year old Kyndra Michelle Bopp (Kyndra). Kyndra’s parents were married for a short time and divorced when she was seven months old. Three months later, Kyndra’s mother remarried and Kyndra’s stepfather adopted her with the consent of her natural father. Respondents are the parents of Kyndra’s natural father.
 

 Eight months after the adoption, respondents petitioned for visitation rights to Kyndra. After hearing testimony of the parties and expert witnesses, the district court concluded that visitation would be in Kyndra’s best interest, and it granted visitation rights to respondents.
 

 For reasons stated hereafter, the district court’s order granting visitation to respondents is reversed.
 

 FACTS
 

 Respondents James R. Lino and Dana Lino
 
 [1]
 
 (the Linos) are the
 
 *1248
 
 natural paternal grandparents of Kyndra. Appellant Michelle Bopp (Michelle) is Kyndra’s mother. Michelle married respondents’ son, Robert Lino (Robert), on June 24, 1989. Kyndra was born to that marriage on July 3, 1990. Shortly thereafter, marital difficulties arose between Michelle and Robert resulting in their divorce on February 5, 1991. Michelle was granted physical custody of Kyndra.
 

 Three months later, on May 19, 1991, Michelle married appellant Andrae Bopp (Andy). Robert continued to have visitation rights with Kyndra until November 20, 1991, when he relinquished his parental rights so that Kyndra could be adopted by Andy. On November 25, 1991, a decree of adoption was entered.
 

 Eight months after the adoption, on July 17, 1992, the Linos filed a “Petition for Visitation” with the district court. The Bopps opposed visitation because they believed that visitation was not in the best interests of Kyndra. The Bopps also contended that the Linos did not have standing to pursue visitation rights. Arguments on the petition for visitation were heard by the district court on February 5, 1993. The district court, in concluding that visitation was in the best interests of Kyndra, opined:
 

 After listening to the testimony and observing the demeanor of the witnesses, the court believes that visitation with the [Linos] will not hinder the minor child’s adoptive relationship or harm the child’s emotional or physical well being. It is undisputed that until shortly after the divorce of Robert and Michelle, [the Linos] had a loving and caring relationship with their granddaughter, Kyndra. That relationship continued even after the divorce when Robert had visitation and took Kyndra to the homes of the [Linos]. Michelle testified she gave notice she was terminating the right of [the Linos] to visit their granddaughter. This court finds that a relationship would still exist between Kyndra and [the Linos] but for the actions of Michelle.
 

 The Petition filed by the [Linos] to establish a limited visitation appears to this court to be motivated out of their continuing love and affection for Kyndra. The problems that have been testified to between the [Linos] and Kathy Lino on one side and Andrea [sic] and Michelle on the other do not appear to this court to be significant. Those problems seem to be somewhat magnified by the Bopps’ natural fear that Kyndra will learn of the adoption before they are ready to discuss it with her. . . .
 

 The difficulties of raising a child in today’s society are
 
 *1249
 
 frightening. The ability to interact with people of all ages whether it be with parents, grandparents or peers is very important. It is the disintegration of the family that has been blamed for many of society’s problems. Courts should attempt, where possible, to encourage family unity not to destroy it.
 

 Kyndra is most fortunate to have parents that love her dearly. This court believes a child cannot receive too much love and affection. Knowing that she is loved by the [Linos] as well as her parents will only enhance Kyndra’s security and feeling of well being.
 

 Therefore, this court finds it is in the best interests of Kyndra that the [Linos] be granted limited visitation.
 

 The district court went on to grant the Linos visitation rights on the first Wednesday of every month for two hours during the lunch period.
 

 LEGAL DISCUSSION
 

 The district court’s findings of fact will not be set aside unless those findings are clearly erroneous. Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 591-92 (1990). Accordingly, if the district court’s findings are supported by substantial evidence, they will be upheld. Pandelis Constr. Co. v. Jones-Viking Assoc., 103 Nev. 129, 130, 734 P.2d 1236, 1237 (1987). Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986). The district court’s conclusions of law, however, are reviewed de novo. City of Reno v. Van Ermen, 79 Nev. 369, 381, 385 P.2d 345, 351 (1963);
 
 see also
 
 Great American Airways v. Airport Authority, 103 Nev. 427, 429, 743 P.2d 628, 629 (1987).
 

 Whether respondents had standing to petition for visitation rights
 

 Under common-law principles, grandparents did not have any legal right to visit and communicate with their grandchildren if visitation and communication were forbidden by the child’s parents. The reasoning behind that rule of law was that any judicial enforcement of grandparent visitation rights would serve to divide, and to thereby hinder, proper parental authority.
 
 See generally
 
 59 Am. Jur. 2d
 
 Parent and Child
 
 § 36 (1987 & Supp. 1993);
 
 see also
 
 Roberts v. Davis, 328 So. 2d 879 (Fla. Dist. Ct. App. 1976) (reversing lower court’s grant of visitation rights to
 
 *1250
 
 paternal grandparents); Carlson v. Carlson, 558 P.2d 836 (Wash. Ct. App. 1976) (state law did not authorize the court to grant visitation rights to maternal grandparent).
 

 In recent years, however, statutes regarding grandparental visitation have been rapidly shifting emphasis towards whether grandparental visitation is in the best interests of the child.
 
 See, e.g.,
 
 NRS 125A.330. However, there is a split of authority on grandparental visitation rights when a child’s parents divorce and the custodial parent remarries and the new stepparent adopts the child with the noncustodial parent’s approval.
 
 See generally
 
 Annotation,
 
 Grandparents’ Visitation Rights,
 
 90 A.L.R. 222 (1979 & Supp. 1993). Generally, in the absence of a statute to the contrary, a natural grandparent has no visitation rights to a grandchild once that child has been adopted.
 
 See
 
 Ex parte Bron-stein, 434 So. 2d 780 (Ala. 1983) (the consequence of adoption is to divest the natural parent of all legal rights and obligations to the child; such abrogation of all legal relationship and rights as to a natural parent must likewise apply to the grandparent of an adopted child); Lipginski v. Lipginski, 476 N.E.2d 924 (Ind. Ct. App. 1985) (adoption removed condition precedent to grandparents’ rights to seek visitation);
 
 see also
 
 Bond v. Yount, 734 P.2d 39 (Wash. Ct. App. 1987) (paternal grandparents had no standing to petition for visitation of grandchild who already had been adopted under strong public policy holding the privacy of adoption to be sacrosanct).
 

 The Bopps contend that the Linos lacked standing to petition the district court for visitation rights to Kyndra, because after the adoption Kyndra was no longer a legal relative of the Linos. In support of this contention, the Bopps cite to NRS 127.160 which, in pertinent part, provides:
 

 Upon the entry of an order of adoption, the child shall become the legal child of the persons adopting him, and they shall become his legal parents with all the rights and duties between them of natural parents and legitimate child. . . . After a decree of adoption is entered, the natural parents of an adopted child shall be relieved of all parental responsibilities for such child, and they shall not exercise or have any rights over such adopted child or his property. The child shall not owe his natural parents or their relatives any legal duty nor shall he inherit from his natural parents or kindred.
 

 This statute establishes a new legal family for the adopted child and terminates the legal relationship between the child and her natural kindred. Thus, except as otherwise expressly provided by the Nevada Revised Statutes, the Linos have no rights with
 
 *1251
 
 respect to Kyndra, including visitation with her, subsequent to Kyndra’s adoption.
 

 NRS 127.171 provides:
 

 1. In a proceeding for the adoption of a child, the court may grant a reasonable right to visit to certain relatives of the child only if a similar right had been granted previously pursuant to NRS 125A.330.
 

 2. The court may not grant a right to visit the child to any person other than as specified in subsection 1.
 

 This statute provides an exception to the termination of legal rights of certain relatives to a child who is the subject of adoption proceedings. Prior to the entry of a decree of adoption, certain relatives continue to have a legal relationship with the child. Because of that legal relationship, certain relatives may petition in the adoption proceeding for an order granting visitation rights, but only if that right had previously been granted to them under NRS 125A.330. In the instant case, it is undisputed that visitation rights had not previously been granted pursuant to NRS 125A. 330. The Linos did not petition for visitation rights prior to or at the adoption proceedings. After the adoption decree was entered, the Linos’ legal relationship with Kyndra ceased to exist. Nevada does not have a statute permitting ex-relatives to petition for visitation.
 
 [2]
 
 Accordingly, the Linos had no standing to petition for visitation.
 

 Whether the district court has jurisdiction to grant visitation rights after a decree of adoption has been granted
 

 The final issue in this case is whether the district court had jurisdiction to grant visitation rights to the Linos after Kyndra was adopted by her stepfather. Several statutes are controlling on this issue. In pertinent part, NRS 125A.330 provides:
 

 
 *1252
 
 1. . . . [I]f a parent of an unmarried minor child is deceased or divorced or separated from the parent who has custody of the child, or his parental rights have been relinquished or terminated, the district court. . . may grant to the
 
 grandparents,
 
 parents and other children of either parent of the child a reasonable right to visit the child during his minority, if the court finds that the visits would be in the best interests of the child.
 

 3. Rights to visit a child may be granted:
 

 (a) In a divorce decree;
 

 (b) In an order of separate maintenance; or
 

 (c) Upon a petition filed by an eligible person after a divorce or separation or after the death of the parent to whom the person was related, or upon the relinquishment or termination of a parental right.
 

 (Emphasis added.) Under this statute the primary determination for the district court to make is whether visitation is in the best interests of the child. Once that determination is made, visitation can be granted at three distinct times: (1) in a divorce decree; (2) in an order for separate maintenance; or (3) upon a petition filed by an eligible person after a divorce or separation, or upon the relinquishment of parental rights. Utilizing the maxim of statutory construction
 
 expressio unius est exclusio alterius,
 
 those three times are the only times when visitation can be granted under NRS 125A.330. In the instant case, visitation was not granted until eight months after Kyndra was adopted by Andy.
 

 In regards to visitation rights in adoption proceedings, NRS 127.171 provides:
 

 1. In a proceeding for the adoption of a child, the court may grant a reasonable right to visit to certain relatives of the child only if a similar right had been granted previously pursuant to NRS 125A.330.
 

 2. The court may not grant a right to visit the child to any person other than as specified in subsection 1.
 

 This statute expands upon NRS 125A.330 and provides a fourth time for granting visitation rights (at the adoption proceeding). However, NRS 127.171(2) expressly limits the district court to granting visitation rights to those persons who had been granted a similar right previously pursuant to NRS 125A.330. The district court interpreted NRS 127.171 to only be a restriction on granting visitation rights
 
 during an adoption proceeding,
 
 not before or after the adoption proceeding.
 

 An adoption completely abrogates the legal relationship between a child and his natural parents. NRS 127.160. Likewise,
 
 *1253
 
 an adoption completely abrogates the legal relationship between a child and his natural grandparents. Ex parte Bronstein, 434 So. 2d 780 (Ala. 1983). However, NRS 127.171 also extends visitation rights to close relatives who possessed those rights before the grandchild was adopted. In addition, NRS 127.171 serves as a “statute of limitations” on the right of a grandparent to petition for visitation rights to a grandchild.
 

 The district court’s interpretation of NRS 127.171 is convenient to the decision that resulted. However, that interpretation renders the statute nugatory. NRS 127.171 clearly and unambiguously limits visitation rights to the subject of an adoption to those persons who had previously obtained similar rights pursuant to NRS 125A.330, and under no other circumstances. If the district court already had unfettered jurisdiction to grant visitation rights after an adoption, the Nevada Legislature would not have enacted NRS 127.171. Moreover, the Nevada Legislature would not have limited visitation rights to those already possessing that right if it had intended the district court to be able to create visitation rights after an adoption.
 

 CONCLUSIONS
 

 An adoption severs the legal relationship between a child and her natural kindred. Once an adoption is entered, a grandparent lacks standing to petition for visitation rights. NRS 127.171 serves as a jurisdictional requisite for a grandparent to petition for visitation rights to a natural grandchild. The Linos did not petition for visitation rights until eight months after Kyndra was adopted. Thus, the Linos’ petition for visitation was untimely and the district court lacked jurisdiction to grant visitation. Accordingly, the district court’s order granting visitation is reversed.
 

 [1]
 

 Respondents James Lino and Dana Lino were previously married and
 
 *1248
 
 currently maintain a friendly relationship. James Lino has been married to his present wife, Kathy, for over 20 years.
 

 [2]
 

 In the district court, the Linos relied primarily on this court’s decision in Morse v. Daly, 101 Nev. 320, 704 P.2d 1087 (1985). In
 
 Morse,
 
 this court held that it was within the proper exercise of the district court’s equitable powers to condition an adoption decree by reserving jurisdiction to consider possible future requests for visitation privileges by the child’s step grandmother (respondent Daly was married to the child’s natural grandfather). This court further stated that: “nothing in Nevada’s adoption statutes or in our case authority precludes a district court from incorporating within an adoption decree an order for visitation, if the court finds it to be in the child’s best interest.”
 
 Morse,
 
 101 Nev. at 323, 704 P.2d at 1089.
 

 However, the Linos’ reliance on
 
 Morse
 
 is misplaced.
 
 Morse
 
 was decided before NRS 127.171 was enacted. That statute precludes the district court from granting visitation rights to anyone who had not previously been granted visitation under 125A.330. It is undisputed that the Linos were not granted visitation rights prior to or at the adoption proceedings.