*1000 OPINION

Per Curiam:

FACTS

Martin J. Schwartz and Phyllis R. Schwartz, trustees of the Martin J. Schwartz and Phyllis R. Schwartz revocable family trust (“the Landowners”) own an 8.9 acre parcel of undeveloped land abutting U.S. Highway 95 in Las Vegas. In 1991, the State notified the Landowners of its intent to convert U.S. 95 into a limited-access freeway, which would preclude direct access to the freeway from their property. An alternative means of egress and ingress would be provided through construction of a frontage road.
The construction of the frontage road did not entail the taking of any part of the Landowners’ land; instead, the road (an extension of Buffalo Drive) was constructed west of the Landowners’ property, effectively sandwiching the property between the frontage road on the west and U.S. 95 on the east. The Landowners’ only current means of egress and ingress from their property is via the frontage road.
In an inverse condemnation action filed against the State, the Landowners alleged injury to their property caused by the grade of the frontage road, which is roughly thirteen feet higher than the grade of U.S. 95. The alleged damages resulted from the diminution in the fair market value of the property attributable to the difference between the cost of developing access to the frontage road and the cost of developing access to U.S. 95 if the State had not precluded the latter means of access.
In respect of the State’s motion for partial summary judgment, the district court ruled, inter alia, that the conversion of U.S. 95 into a limited access freeway caused a substantial impairment to the direct access of the Landowners’ property as a matter of law. In granting the partial summary judgment, however, the district court concluded, pursuant to the “original grade doctrine,” that the established grade of the frontage road was reasonable — a fact which the Landowners did not dispute in their opposition. The practical effect of the partial summary judgment was to disallow evidence at trial on the diminution in the fair market value of the Landowners’ property attributable to the incremental costs associated with developing access to the frontage road. On the basis of the other evidence presented by the Landowners, the jury awarded no compensation.
The Landowners now challenge on appeal the partial summary judgment and its impact on the issue of damages attributable to *1001 the grade of the frontage road, along with the resulting judgment entered upon the jury verdict. The Landowners insist that because they were foreclosed from presenting evidence to the jury on the true measure of their damages, reversal and a new trial are warranted.

DISCUSSION

The Landowners first address their right to compensation under this court’s ruling in State ex rel. Dep’t of Highways v. Linnecke, 86 Nev. 257, 468 P.2d 8 (1970), wherein we held:
An abutting owner of a public highway has a special right of easement in a public road for access purposes. This is a property right of easement which cannot be damaged or taken from the owner without due compensation. People v. Murray, 342 P.2d 485, 488 (Cal. App. 1959). ... If he has free and convenient access to his property and his means of egress and ingress are not substantially interfered with, he has no cause for complaint. Breidert v. So. Pac. Co., 394 P.2d 719, 722 (Cal. 1964); City of Phoenix v. Wade, 428 P.2d 450, 454 (Ariz. App. 1967). The determination of whether such substantial impairment has been established must be reached as a matter of law. The extent of such impairment must be fixed as a matter of fact.
Id. at 260, 468 P.2d at 9-10.[1] We held further that damages are to be calculated based on the difference in market value “before and after” the impairment. Id. at 261, 468 P.2d at 10. The construction of a frontage road providing an alternative means of ingress and egress is a factor mitigating damages. Id. Accordingly, the Landowners assert that they should have been allowed to present evidence on the damages caused to their property by the incremental cost of having to develop access to the frontage road rather than to U.S. 95.
The Landowners next challenge the State’s use of the “original grade doctrine” upon which partial summary judgment against them was based. This rule, never before applied in Nevada, shelters states from liability for damage to property caused by the establishment of the original grade of an abutting road, but only if the state acts reasonably. See, e.g., Hagen v. City of Seattle, 339 *1002 P.2d 79, 80 (Wash. 1959). The substance of the Landowners’ argument against the application of this doctrine in the present case is that the grade of the frontage road, being thirteen feet above the grade of U.S. 95, has substantially diminished the value of their property, and no doctrine should apply to divest them of their right to just compensation.
The State in turn relies primarily on the original grade doctrine, arguing that it is protected from liability for damages to the Landowners’ property caused by the grade of the frontage road because the grade is, in fact, reasonable. Moreover, the State contends that the Landowners failed to rebut by affidavit or otherwise at the summary judgment stage the State’s evidence that the grade of the frontage road was established in a reasonable manner.
The State also insists that the Landowners offered absolutely no evidence pertaining to the diminution in the fair market value of their property resulting from the established grade of the frontage road. An expert property appraiser, who would have been a logical and essential witness, never submitted an affidavit with the Landowners’ opposition to the State’s motion for summary judgment putting the essential facts at issue.[2] In addition, the State contends that the district court did not err because it is undisputed that the Landowners had not developed access to U.S. 95 at the time the State chose to limit access.
With regard to the holding of Linnecke and its progeny,[3] we conclude that the district court erred in disallowing evidence on the diminution in the fair market value of the Landowners’ property attributable to the incremental cost of developing access to the frontage road. Linnecke expressly holds that once a substantial impairment of access is established as a matter of law, damages are to be calculated on a “before and after” basis and “the variables to be considered in arriving at a money figure are for the jury. . . . The determination of market value includes the consideration of any elements that fairly enter into the question of *1003 value which a reasonable businessman would consider when purchasing.”[4] Linnecke, 86 Nev. at 261-62, 468 P.2d at 10-11.
Although compensation in Linnecke was based on the severance damages provision in NRS 37.110(2), which is not implicated by the instant case in- which there has been no taking of land, NRS 37.110(3) provides that the following must be ascertained and assessed: “If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages.” We have held that this provision applies to situations where physical damage has occurred to property as a result of construction of an improvement or where a property right which is directly connected to the use or ownership of the property is substantially impaired or extinguished. See State, Dep’t of Transp. v. Las Vegas Build. Materials, Inc., 104 Nev. 479, 485-86, 761. P.2d 843, 847 (1988); Sloat v. Turner, 93 Nev. 263, 269, 563 P.2d 86, 89 (1977).
As previously noted, a property owner abutting a public highway has a special right of easement in a public road for access purposes, which is a property right of the class protected by NRS 37.110(3). Such a property right may not be substantially impaired without the payment of damages to the affected property owner. Therefore, the jury should have been allowed to consider the Landowners’ evidence on “before and after” damages attributable to the incremental cost of developing access to the frontage road, even if the State acted reasonably in the construction of the road.[5] This is true despite the fact that the Landowners had not yet developed access to U.S. 95 when the right of access was *1004 denied, because a right of easement nevertheless existed and was part of the “before” factor of the fair market value consideration of the property.[6]
We have carefully considered all other issues not expressly addressed in this opinion and conclude that we either need not address them or they are without merit.

CONCLUSION

For the above reasons, we conclude that the district court erred in granting partial summary judgment in favor of the State, and that the error fatally infected the trial. We therefore reverse and remand for a new trial consistent with the dictates of this opinion.

We note that the district court’s conclusion that the Landowners have suffered a substantial impairment of access as a matter of law has not been challenged by cross-appeal from the State, and we therefore proceed with our analysis based on the premise that the district court did not arrive at this conclusion in error.

The State cites the following excerpt from Nichols on Eminent Domain: It must be cautioned that costs to cure while admissible for the purpose of establishing just compensation do not create individual rights to damage, but are merely evidence of the effect of the taking upon market value and therefore upon diminution in value of the remainder.
4A Julius L. Sackman, et al., Nichols on Eminent Domain § 14A.04[2], at 14A-101 (3d ed. 1994).

See Culley v. County of Elko, 101 Nev. 838, 711 P.2d 864 (1985); Lied v. County of Clark, 94 Nev. 275, 579 P.2d 171 (1978).

Some damages, of course, resulting from the orderly pursuits of society, are simply not compensable. See Probasco v. City of Reno, 85 Nev. 563, 566, 459 P.2d 772, 774 (1969) (there is no right to compensation for damages resulting from reasonable zoning regulations, or by reason of the diversion of traffic away from one’s property); State ex rel. Herman v. Schaffer, 467 P.2d 66, 73-74 (Ariz. 1970) (no measure of compensation may be calculated based on noncompensable factors, such as diversion of traffic or loss of customers, goodwill, income or profits — except to the extent that the highest and best use of the real estate in question is affected thereby). The “before and after” damages referred to in Linnecke pertain exclusively to those arising in connection with a diminution in the value of the Landowners’ real estate caused by the substantial impairment of access.

We do not intend by our holding to effectuate a wholesale repudiation of the original grade doctrine. We hold only that state improvements causing physical damage to property or the substantial impairment of some property right directly connected to the use or ownership of the property give rise to compensation as discussed in this opinion. Beyond the existence of such damage or substantial impairment, we do not reach the merits of the original grade doctrine.

In its answering brief, the State discusses the bureaucratic nightmare the Landowners would have encountered in developing access to U.S. 95. Nevertheless, despite having some bearing on the fair market value of the property in the “before” condition, requirements associated with the development of access to U.S. 95 would not affect the Landowners’ absolute right of easement.
In addition, the State argues quite properly that the incremental costs alleged by the Landowners are compensable only to the extent that they affect fair market value. However, the State mistakenly maintains that the Landowners should have submitted affidavits regarding the change in fair market value at the summary judgment stage. The State did not place a change in fair market value at issue in its motion for summary judgment; instead, the State relied exclusively on the proposition that the Landowners’ alleged damages were noncompensable as a matter of legal theory.