COUNTY OF CLARK, a Political Subdivision of the State of Nevada, Appellant, v. SUN STATE PROPERTIES, LTD., a Nevada Limited Partnership; and RUTH PYLES, Trustee of the Clarence and Ruth Pyles Trust, Respondents.

No. 35856

July 21, 2003                                      72 P.3d 954

---

[Rehearing denied August 29, 2003]

*David J. Roger,* District Attorney, and *Michael L. Foley,* Deputy District Attorney, Clark County, for Appellant.

*Carl E. Lovell Jr.,* Las Vegas, for Respondent Pyles.

*Mushkin & Hafer* and *Mark C. Hafer* and *Michael R. Mushkin,* Las Vegas, for Respondent Sun State Properties.

*Brian Sandoval,* Attorney General, and *Margaret E. Kerr,* Deputy Attorney General, Carson City, for Amicus Curiae State of Nevada.

Before the Court EN BANC.

## OPINION

By the Court, ROSE, J.:

In this appeal, we consider the proper procedure for determining just compensation in an eminent domain action when there are various interests involved in the condemned property. We hold that the eminent domain statutes codified the undivided-fee rule, which requires the court to first determine the value of the property as a whole, and in a subsequent hearing, to apportion the award among the various interests. Accordingly, we conclude that the district court erred when it first valued the various interests in order to determine the just compensation for the condemned property, and therefore, we reverse and remand for a new trial.

We also consider whether a condemnee is entitled to damages for lost profits resulting from the condemnor's delay in not bringing the action to trial within two years from when the action was filed. We hold that the condemnee may recover damages for lost profits when the condemnee has demonstrated that the condemnor caused unreasonable delay in bringing the action to trial. Because the record does not indicate what caused the delay, we direct the district court, on remand, to revisit this issue.

## FACTS

On June 7, 1995, the County of Clark filed a complaint in condemnation of real property to acquire two parcels of land, which contained apartment units, located in downtown Las Vegas, in order to build a jail facility. Sun State Properties, Ltd., owned one of the parcels in fee simple. Clarence and Ruth Pyles, trustees of The Clarence and Ruth Pyles Trust (the Pyles), owned the second parcel in fee simple, but the Pyles leased the parcel to Sun State for $500 per month.[1] The lease for the second parcel was for fifty-five years, ending on February 1, 2018.

On July 14, 1995, the district court granted the County's motion for immediate occupancy of the two parcels. The district court also ordered the County to post a cash bond of $1,640,000. Following the parties' stipulation regarding the funds from the cash bond, several lenders that held deeds of trust on the parcels were paid in full, Sun State received $424,724.14, the Pyles received $122,100, and a balance of $77,900 was deposited into an interest-bearing account in trust for Sun State and the Pyles.

Because trial had not commenced within two years, the district court set the valuation date at June 22, 1999, the scheduled trial date. However, trial did not commence until November 30, 1999, because the district court granted the Pyles' motion for a continuance.

At trial, several appraisal experts presented various valuations for the acquired parcels. Shelli Lowe, Sun State's appraisal expert, testified that she valued the whole property, as it existed prior to the taking, at $6,100,000. She next valued the remaining property after the taking at $3,915,000. She then valued the parcels acquired by the County at $1,900,000 and Sun State's severance damages at $285,000—the diminished value of Sun State's remaining parcels that were part of the parcels being taken.[2] Lowe concluded that total just compensation for the acquired parcels and Sun State's severance damages would be $2,185,000.

Upon Sun State's request, Lowe provided an addendum to her appraisal report wherein she valued the leased fee interest and leasehold interest separately. In doing so, Lowe reviewed the rental value of the lease and the term of the lease. Before testifying to the separate valuations, Lowe opined that the improvements on the land would have no value at the end of the lease because, at the end of the term, the improvements would be forty-eight years of age. Nevertheless, Lowe valued the leased fee at $263,000 and the leasehold at $885,000.

---

[1]Sun State was the successor lessee on a lease that was executed in 1963.

[2]*See M&R Investment Co. v. State Dep't Transp.,* 103 Nev. 445, 449, 744 P.2d 531, 534 (1987) (noting that "severance damages are awarded when a partial taking of a landowner's property occurs").

Edward Rothenberg, a real estate appraiser, testified on behalf of Sun State and the Pyles. He appraised the leased fee interest and the leasehold interest separately, explaining that the two interests must be valued separately because the fee simple estate does not exist as long as it is subject to a long-term lease; thus, the fee simple estate cannot be sold. Rothenberg valued the leased fee at $1,030,000 and the leasehold at $1,000,000, which equates to $2,030,000 for the second parcel. He also estimated Sun State's damages for lost profits from immediate occupancy in June 1995 to the valuation date of June 1999 at $465,600.

John Kiehlbauch, the County's appraiser, testified that he valued the whole property before the taking at $5,940,000. He next valued the remaining property after the taking at $3,980,000. He then valued the parcels acquired by the County at $1,790,000 and apportioned the value: the Pyles' interest at $984,000 and Sun State's interest at $805,500. He calculated Sun State's severance damages at $170,000. Kiehlbauch testified that the total just compensation for the acquired parcels and Sun State's severance damages equaled $1,960,000.

Verne Cox, the Pyles' appraiser, did not testify at trial, but his appraisal report was submitted at trial. He valued the fee simple at $1,050,000 and apportioned this value as follows: the lease fee at $251,000 and the leasehold at $799,000.

At the conclusion of the trial, the County argued that under NRS 37.115, the district court was required to use the undivided-fee rule, whereby the property is valued under the statutory definition of fair market value, and then, in a subsequent hearing, the court is required to apportion the compensation among the various interests. On the other hand, Sun State and the Pyles argued that the district court was required to value the aggregate of their various interests in the first hearing, and in a subsequent hearing, the court was required to apportion the interests. Thereafter, the district court entered a written decision rejecting the undivided-fee rule as the law in Nevada, ruling that NRS 37.115 only sets forth the procedures in a condemnation action. In so ruling, the district court relied on *People v. Lynbar, Inc.,*[3] a California appeals court case that construed a statute similar to NRS 37.115. The district court explained that the *Lynbar, Inc.* court construed the statute as a procedural statute, rather than as a substantive rule, such as the undivided-fee rule.

The district court found that Sun State's leasehold interest was a compensable interest and accepted Sun State's and the Pyles' valuation, stating that it was not contradicted at trial. Thus, the district court valued their interests at $3,634,000. Following NRS

_____
[3]62 Cal. Rptr. 320 (Ct. App. 1967).

37.115, the district court ordered the parties to present additional evidence on February 7, 2000, regarding the apportionment of Sun State's and the Pyles' interests.

After the apportionment hearing, the district court entered its findings of fact and conclusions of law. The district court made the following awards: $1,868,000 as just compensation for Sun State's fee interest in the first parcel and for its leasehold interest in the second parcel; $250,000 in severance damages to Sun State; $462,000 in damages to Sun State from the date of immediate occupancy; $1,030,000 as just compensation for the Pyles' leased fee interest; and $24,000 in damages to the Pyles from the date of immediate occupancy.

In addition to challenging the district court's procedure in determining the just compensation, the County challenges the district court's award of damages, which the County claims were inappropriately awarded as lost profits.

## DISCUSSION

*Standard of review*

This court has consistently provided that the district court's findings of fact will not be disturbed on appeal if they are supported by substantial evidence.[4] But the district court's conclusions of law are reviewed de novo.[5]

Whether NRS 37.115 codified the undivided-fee rule is an issue of statutory construction. Statutory construction involves a question of law that this court reviews de novo.[6] This court gives effect to the legislature's intent by looking first to the plain language of the statute.[7] But if the statutory language is ambiguous or fails to address the issue, this court construes the statute according to that which "reason and public policy would indicate the legislature intended."[8]

---

[4]*See, e.g., Pandelis Constr. Co. v. Jones-Viking Assoc.,* 103 Nev. 129, 130, 734 P.2d 1236, 1237 (1987); *Hobson v. Bradley & Drendel, Ltd.,* 98 Nev. 505, 506-07, 654 P.2d 1017, 1018 (1982).

[5]*See, e.g., Blaich v. Blaich,* 114 Nev. 1446, 1447-48, 971 P.2d 822, 823 (1998); *Bopp v. Lino,* 110 Nev. 1246, 1249, 885 P.2d 559, 561 (1994).

[6]*See A.F. Constr. Co. v. Virgin River Casino,* 118 Nev. 699, 703, 56 P.3d 887, 890 (2002).

[7]*See id.*

[8]*State, Dep't Mtr. Vehicles v. Vezeris,* 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986) (internal quotations and citation omitted), *quoted in Salas v. Allstate Rent-A-Car, Inc.,* 116 Nev. 1165, 1168, 14 P.3d 511, 514 (2000).

*Undivided-fee rule*

Under federal and state constitutional law, condemnation of private property requires the condemnor to pay just compensation.[9] Constitutional principles provide that just compensation is measured by the fair market value of the condemned property.[10] NRS 37.009(6) defines fair market value as the "most probable price," which this court has held is constitutional.[11]

Regarding the evidence that the trier of fact must consider in a condemnation action, NRS 37.110, which is titled "Ascertainment and assessment of damages," provides in pertinent part:

> The court, jury, commissioners or master must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:
>
> 1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and of each estate or interest therein shall be separately assessed.

Additionally, this court has provided, " 'The determination of market value includes the consideration of any elements that fairly enter into the question of value which a reasonable businessman would consider when purchasing.' "[12]

In determining the fair market value when there are various interests in the condemned property, NRS 37.115 provides for a bifurcated proceeding:

> Where there are two or more estates or divided interests [in] property sought to be condemned, the plaintiff is entitled to have the amount of the award for such property first determined as between plaintiff and all defendants claiming any interest therein. The respective rights of such defendants in and to such award shall be determined by the court, jury, or master in a later and separate hearing in the same proceeding and the amount apportioned by order accordingly.

The County and the State, as amicus curiae, contend that the Legislature codified the undivided-fee rule in NRS 37.115, re-

---

[9]*County of Clark v. Buckwalter,* 115 Nev. 58, 61-62, 974 P.2d 1162, 1164 (1999).

[10]*United States v. 50 Acres of Land,* 469 U.S. 24, 25 (1984).

[11]*Buckwalter,* 115 Nev. at 62, 974 P.2d at 1164-65.

[12]*Schwartz v. State, Dep't of Transp.,* 111 Nev. 998, 1002-03, 900 P.2d 939, 942 (1995) (quoting *State ex rel. Dep't of Hwys. v. Linnecke,* 86 Nev. 257, 261-62, 468 P.2d 8, 10-11 (1970)).

quiring the court to first determine the fair market value of the property without any encumbrances, and then in a subsequent hearing, to apportion the value among the various interests. The district court, however, rejected the County's argument at trial, and applied the aggregate-of-interests rule.

When there are various interests in the condemned property, the majority of the jurisdictions applies the undivided-fee rule.[13] The undivided-fee rule provides that condemned property is first valued as though it was unencumbered, and in a subsequent hearing, the total award is apportioned among the various interests. The reasoning behind the rule is:

> The duty of the public to make payment for the property which it has taken is not affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective estates.[14]

Under the undivided-fee rule, the condemnor has no interest in the apportionment hearing because it has met its obligation when it pays the court the total award.[15] Furthermore, the undivided-fee rule provides that "the division of a fee into separate interests cannot increase the amount of compensation that the condemnor has to pay for the taking of the fee."[16]

On the other hand, the undivided-fee rule is not universal because a minority of jurisdictions applies the aggregate-of-interests. rule or the summation rule when there are various interests in the condemned property.[17] Under the aggregate-of-interests rule, each of

---

[13]*See, e.g., Harco Drug, Inc. v. Notsla, Inc.,* 382 So. 2d 1, 5-6 (Ala. 1980); *Gifford v. City of Colorado Springs,* 815 P.2d 1008, 1011 (Colo. Ct. App. 1991); *J.J. Newberry Co. v. City of East Chicago,* 441 N.E.2d 39, 43 (Ind. Ct. App. 1982); *City of Manhattan v. Kent,* 618 P.2d 1180, 1184-85 (Kan. 1980); *Department of Highways v. Hy-Grade Auto Court,* 546 P.2d 1050, 1053-54 (Mont. 1976); *Great Atlantic & Pacific Tea Co. v. State,* 238 N.E.2d 705, 710 (N.Y. 1968); *Urban Renewal Agency, Etc. v. Wieder's Inc.,* 632 P.2d 1334, 1336 (Or. Ct. App. 1981); *Van Asten v. State,* 571 N.W.2d 420, 422 (Wis. Ct. App. 1997) (noting that the undivided-fee rule stems from "the common law theory that anything that was attached to a freehold was annexed to and considered to be a part of it"); *see also* 4 Julius L. Sackman, *Nichols on Eminent Domain* § 12.05[1] (rev. 3d ed. 2002) (cases cited therein).

[14]4 Sackman, *supra* note 13, § 12.05[1], at 12-104; *see also* 1 Lewis Orgel, *Valuation Under the Law of Eminent Domain* § 109 (2d ed. 1953).

[15]*Kent,* 618 P.2d at 1184.

[16]*U.S. v. 131.68 Acres of Land, More or Less, Etc.,* 695 F.2d 872, 875 (5th Cir. 1983).

[17]*See* 4 Sackman, *supra* note 13, § 12.05[2], at 12-112; *see also* 1 Orgel, *supra* note 14, § 109, at 464 ("The general statement is . . . true in

the various interests that contribute to the value of the real property are valued separately, and the total represents the market value of the real property.[18] Notably, " '[u]se of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property.' "[19]

We hold that NRS 37.115 codified the undivided-fee rule. The plain language of the statute provides that in the first hearing, the just compensation award is to be determined between the condemnor and all the condemnees. We note that in this first hearing, the existence of the encumbrance on the property, *i.e.*, the lease, is relevant in valuing the property as a whole.[20] The statute further provides that in the second hearing, the court must apportion the award based on the value of each condemnee's interest. In this hearing, NRS 37.110 becomes relevant because the value of each property must be ascertained and assessed in order to apportion the total award for the condemned property.

In rejecting the undivided-fee rule as Nevada law, the district court relied on *People v. Lynbar, Inc.*,[21] which respondents contend was appropriate. In *Lynbar, Inc.*, the California Court of Appeal addressed an argument similar to the argument the County raises in this appeal—the bifurcation-of-proceeding statute, which parallels NRS 37.115, required the court to first determine the fair market value as though the property were unencumbered, regardless of the fact that on the date of valuation the various interests in the property actually enhanced the fair market value.[22] The court held that the statute was exclusively a procedural statute that did not embody either the undivided-fee rule or the aggregate-of-interests rule, but permitted the condemnor to request that the total award of the property be determined first, and then in a subsequent proceeding, be apportioned among the various interests.[23]

implying that out of every hundred cases in eminent domain, there will probably be only a relatively few in which the total compensation has not been ostensibly based on a valuation of the land as if it were held in undivided fee simple.'').

[18]*See Kent,* 618 P.2d at 1184.

[19]*Id.* (quoting *Matter of Condemnation of Land, Etc.,* 548 P.2d 756, 760 (Kan. 1976)).

[20]*See Schwartz v. State, Dep't of Transp.,* 111 Nev. 998, 1002-03, 900 P.2d 939, 942 (1995) (stating that the court may consider any element that is relevant in determining the fair market value of the condemned property); *see also Kent,* 618 P.2d at 1185; *Hy-Grade Auto Court,* 546 P.2d at 1053; *Van Asten,* 571 N.W.2d at 422.

[21]62 Cal. Rptr. 320 (Ct. App. 1967).

[22]*Id.* at 324.

[23]*Id.* at 326.

After holding that the statute was procedural, the court addressed the issue of what the "whole" embodies when the condemnor elects to bifurcate the proceedings: "It seems to us that this whole must be the total of what the various involuntary sellers have to sell and not the undivided fee which the condemnor is seeking to acquire."[24] The court stated that even though the statute provides that the condemnor can seek a total award rather than an award of the various interests independently, the requirements of the statute do not correlate to a requirement that the property be valued as though it had a single owner.[25] Moreover, the court noted that it would be unfair to value the property as unencumbered when it actually is encumbered.[26]

We note that the California Supreme Court has not addressed the issue presented in *Lynbar, Inc.,* and that cases from the California Court of Appeal have been inconsistent on this issue[27]—whether the undivided-fee rule or aggregate-of-interests rule is California law. Based on this and because we conclude that the plain language of NRS 37.115 codified the undivided-fee rule, we decline to follow the *Lynbar, Inc.* decision and its reasoning. Thus, we conclude that the district court erroneously applied the aggregate-of-interests rule in reaching the judgment.

Although noting that the fairness of either the undivided-fee rule or aggregate-of-interests rule may be debated, the dissent concludes that to withstand constitutional muster and award just compensation, the aggregate-of-interests rule must be applied when there are various interests in the condemned property. But, if the undivided-fee rule fails to withstand constitutional muster, then

---

[24]*Id.* at 327.

[25]*Id.*

[26]*Id.* at 329.

[27]*See, e.g., New Haven Unified School Dist. v. Taco Bell,* 30 Cal. Rptr. 2d 469, 471-72 (Ct. App. 1994) ("Whether or not the lessor and lessee are joined in a single proceeding, these rules will ordinarily result in an aggregate award to both lessor and lessee equal to market value of the property." (citation omitted)); *People, Department of Public Works v. Amsden Corp.,* 109 Cal. Rptr. 1, 4 (Ct. App. 1973) ("Lynbar simply holds that at the valuation stage, all existing leases must be considered as the condemnor must take the property in the condition in which it finds the property on the applicable date."); *County of Los Angeles v. American Savings & Loan Ass'n,* 102 Cal. Rptr. 439, 442 (Ct. App. 1972) (noting that *Lynbar, Inc.* takes the approach contrary to the undivided-fee rule, and that California case and statutory law support both the undivided-fee and aggregate-of-interests rules); *Costa Mesa Union Sch. Dist. v. Security First Nat. Bank,* 62 Cal. Rptr. 113, 117 (Ct. App. 1967) ("Where there are separate interests in the land taken, the property is to be valued as if owned by a single person, regardless of the separate interests therein, subject to apportionment.").

why is it the majority approach in federal[28] and state courts?[29] The commentators that have responded to the criticism of the undivided-fee rule have noted that such criticism is flawed because it is based upon faulty valuation techniques and factual patterns examined by the opponents of the undivided-fee rule.[30] In actuality, the proper application of the undivided-fee rule results in an eminently fair award.

Similarly; the dissent's criticism of the undivided-fee rule is flawed. The dissent states that the undivided-fee rule may overlook situations in which there are separate estates, as in the instant case, thus failing to provide just compensation. However, as the County notes, the district court's application of the aggregate-of-interests rule resulted in an award that far exceeded the value of both parcels before the taking occurred. Lowe, Sun State's appraisal expert, valued the whole property before the taking at $6,100,000, and then valued the remaining property after the taking at $3,915,000. The district court awarded Sun State and the Pyles $3,148,000 in just compensation.[31] Adding the award of just compensation and Lowe's value of the remaining parcels equals $7,063,000. Thus, the district court's just compensation resulted in an award more than what Sun State and the Pyles lost.[32]

The dissent next interprets NRS 37.115 to be a procedural rule. Under the dissent's interpretation, the various interests must be valued separately in the first hearing. If this is true, then what is the purpose of the statutorily mandated second hearing? The dissent ignores the statutory scheme, which clearly provides that in the first hearing the property is valued as a whole, while considering encumbrances on the property in determining the value of the

---

[28]*See, e.g., U.S. v. 131.68 Acres of Land, More or Less, Etc.,* 695 F.2d 872, 875 (5th Cir. 1983); *Eagle Lake Improvement Co. v. United States,* 160 F.2d 182, 184 (5th Cir. 1947); *Meadows v. United States,* 144 F.2d 751, 752-53 (4th Cir. 1944); *Fain v. United States,* 145 F.2d 956, 958 (6th Cir. 1944); *Silberman v. United States,* 131 F.2d 715, 717 (1st Cir. 1942). *See also* 4 Sackman, *supra* note 13, § 12.05[1] (cases cited therein).

[29]*See* cases cited *supra* note 13.

[30]*See* 4 Sackman, *supra* note 13, § 12.05[4][1], at 12-135 to 12-136; Victor P. Goldberg et al., *Bargaining in the Shadow of Eminent Domain: Valuing and Apportioning Condemnation Awards Between Landlord and Tenant,* 34 UCLA L. Rev. 1083, 1093 (1987).

[31]The district court actually valued Sun State's and the Pyles' interest at $3,634,000, but the court incorrectly included the awards of $462,000 and $24,000 for lost profits in the just compensation award. The awards for lost profits are separate from the just compensation award.

[32]*See Boston Chamber of Commerce v. Boston,* 217 U.S. 189, 195 (1910) (noting that the compensation paid for the condemned property should place the property owner in as good a position as before the taking).

property as a whole; and in the second hearing the just compensation award is apportioned among the various condemnees. The dissent asserts that our interpretation may fairly apply to tenancies, but not to separate estates, such as the instant case. However, the dissent fails to recognize our application of the plain language of NRS 37.115, which clearly states: "Where there are two or more estates or divided interests [in] property sought to be condemned . . . ." If the statute results in unfairness, it is for the Legislature, not this court, to change the statutory scheme.

## Damages for lost profits

The County next contends that the district court erroneously awarded Sun State and the Pyles damages for lost profits from the date of immediate occupancy until the date of valuation. We first recognize that the Legislature has not mandated an award for lost profits within the eminent domain statutes. Regarding the delay in bringing the action to trial, the Legislature has provided:

> [I]f the action is not tried within 2 years after the date of the first service of the summons, and the court makes a written finding that the delay is caused primarily by the plaintiff or is caused by congestion or backlog in the calendar of the court, the date of valuation is the date of the actual commencement of the trial.[33]

The Legislature has defined "primarily" as

> the greater amount, quantity or quality of acts of the plaintiff or the defendant or, if there is more than one defendant, the total delay caused by all the defendants, that would cause the date of the trial to be continued past 2 years after the date of the first service of the summons.[34]

The issue of whether a condemnee is entitled to damages as a result of the condemnor's delay in bringing the action to trial within two years is an issue of first impression. We note, though, that we have stated that in addition to the benefit of the inflated value pursuant to NRS 37.120(1), the condemnee is entitled to prejudgment interest from the date of the taking because the condemnee "has still been deprived of the use of the proceeds that should have been paid at the time of the taking."[35]

In *State, Department of Transportation v. Barsy*,[36] this court held that the condemnor's precondemnation activities may entitle

---

[33]NRS 37.120(1).

[34]NRS 37.120(3).

[35]*County of Clark v. Alper*, 100 Nev. 382, 392-93, 685 P.2d 943, 950 (1984).

[36]113 Nev. 712, 719-20, 941 P.2d 971, 976 (1997), *overruled on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001).

the condemnee to damages in addition to the compensation for the taking. In *Barsy,* the Nevada Department of Transportation (NDOT) planned a project which would affect Barsy's property that he was renting to two tenants.[37] After NDOT decided to implement the project, an NDOT representative visited the two tenants, informing them of the imminent project and of the relocation costs and benefits NDOT would pay them.[38] Because NDOT was unable to provide an accurate time frame for acquisition of the property, the two tenants refused to renew their leases, and Barsy was unable to attract new tenants.[39]

Four years after NDOT announced its decision to implement the project, NDOT filed a condemnation action to acquire Barsy's property.[40] Thereafter, Barsy filed a counterclaim, requesting damages for lost rental income caused by the unreasonable delay in commencing the condemnation action. The district court, however, dismissed Barsy's counterclaim.

On appeal, this court decided to follow the seminal case of *Klopping v. City of Whittier,*[41] regarding the rights of property owners who sustain damages as a result of the condemnor's precondemnation activities. This court noted that the California Supreme Court in *Klopping* "held that where a condemnor 'acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated.' "[42] This court further noted that "[t]he *Klopping* court ruled that a condemnee must demonstrate that the condemnor acted improperly following a precondemnation announcement by unreasonably delaying action or by other unreasonable precondemnation conduct and that such acts resulted in a decrease in the market value of the property."[43] Following *Klopping,* this court concluded that when the condemnee meets the evidentiary burden, "the condemnee must be compensated for loss of income due to precondemnation action or publicity."[44] Because this issue presented a question of fact, this court reversed the dismissal of Barsy's claim for precondemnation damages, and remanded the issue to the district court to determine whether NDOT's precondemnation conduct resulted in a decrease

---

[37]*Id.* at 715, 941 P.2d at 973.

[38]*Id.* at 715, 941 P.2d at 974.

[39]*Id.* at 715-16, 941 P.2d at 974.

[40]*Id.* at 716, 941 P.2d at 974.

[41]500 P.2d 1345 (Cal. 1972).

[42]*Barsy,* 113 Nev. at 720, 941 P.2d at 976 (quoting *Klopping,* 500 P.2d at 1355).

[43]*Id.*

[44]*Id.*

in the market value of Barsy's property, requiring an award for lost profits.[45]

Unlike *Barsy*, Sun State and the Pyles did not request precondemnation damages; rather, they had requested damages for lost profits resulting from the County's delay in bringing the action to trial. If, after filing an action, the condemnor unreasonably delays in bringing the action to trial within two years, then it would appear consonant with our concerns shown in *Barsy* that the condemnee receive damages for lost profits caused by such litigation delay.

Although NRS 37.120(1) prescribes that the government must bear the burden of the inflated value when the action has not been brought to trial within two years, it only requires a finding that the condemnor primarily caused the delay, or that congestion or backlog in the court calendar caused the delay. Using our reasoning in *Barsy*, we hold that the condemnee must meet the more stringent standard set forth in *Barsy* when there is a claim for lost-profits damages resulting from the litigation delay. Thus, the condemnee must demonstrate that the condemnor caused unreasonable delay in bringing the action to trial by purposely and in bad faith pursuing an unconscionable dilatory course of action during litigation.

Here, the district court failed to make any findings regarding the litigation delay, and the record does not indicate what caused the delay. Therefore, on remand, the district court shall provide Sun State and the Pyles an opportunity to demonstrate that they are entitled to damages because the County unreasonably delayed in bringing the action to trial within two years.

## CONCLUSION

NRS 37.115 codified the undivided-fee rule. Because the district court erroneously applied the aggregate-of-interests rule, we reverse the district court's judgment and remand for a new trial.

In addition to receiving the benefit of the inflated value when trial has not commenced within two years, damages for lost profits are permitted when the condemnee demonstrates that the condemnor unreasonably delayed in bringing the action to trial. Even if the condemnee fails to meet this stringent standard, we note that the condemnee is entitled to prejudgment interest from the date of the taking. Because of the ambiguity regarding the cause of the litigation delay, we direct the district court, on remand, to allow Sun

---

[45]*Id.* at 720-21, 941 P.2d at 977.

State and the Pyles an opportunity to demonstrate that the County unreasonably delayed in bringing the action to trial.[46]

AGOSTI, C. J., BECKER, J., and YOUNG, Sr. J., concur.

MAUPIN, J., concurring in part and dissenting in part:

As a general proposition, the undivided-fee rule governs the assessment of damages in condemnation cases brought under Nevada law. However, in those rare cases where the district court concludes that application of the undivided-fee rule may frustrate or prevent an award of just compensation, the district court should have the discretion to utilize the dissent's "aggregate-of-interests" rule in either calculating the award in a bench trial or in crafting instructions in a jury trial. This is one of those rare cases and, as discussed below, we should affirm the judgment rendered in this matter below.

In my view, the district court correctly concluded that the value of the Pyles' interest was artificially low based upon the long-term lease rate. For any number of reasons, business or personal, a landowner may wish to artificially create a low lease rate. The governmental taking entity should not be able to take an economic advantage of the landowner's decision in that regard unless the low rate is dictated by some commercial necessity. Utilization of the "aggregate-of-interests" formula effected just compensation in this case and the fact finder could reasonably conclude that the Pyles' lease rate was not truly reflective of the value of the property.

I appreciate the majority's concern that NRS 37.115 codifies the undivided-fee rule. I believe it does as a general matter, but agree with Justice Gibbons that the "aggregate-of-interests" rule is compatible with the two-tiered approach in the statute and may be used in situations such as that presented here.[1]

GIBBONS, J., with whom SHEARING, J., agrees, concurring in part and dissenting in part:

While I agree with the majority that damages for lost profits resulting from the condemnor's unreasonable delay in bringing the action to trial are compensable, I respectfully dissent from the conclusion that the undivided-fee rule is the only proper means of determining just compensation.

---

[46]THE HONORABLE CLIFF YOUNG, Senior Justice, was appointed by the court to sit in place of the HONORABLE MYRON E. LEAVITT, Justice. Nev. Const. art. 6, § 19; SCR 10.

[1]I agree with the majority that the damages for lost profits resulting from the condemnor's unreasonable delay in bringing the action to trial are compensable.

The United States Constitution declares that no private property shall "be taken for public use, without just compensation."[1] The Constitution of the State of Nevada similarly provides that "[p]rivate property shall not be taken for public use without just compensation having been first made."[2] Both have their origins in James Madison's proposed twelve amendments to the United States Constitution presented at the first session of Congress.[3] Madison's proposed amendment stated that "[n]o person shall . . . be obliged to relinquish his property, where it may be necessary for public use, without a just compensation."[4]

The majority takes no issue with the fundamental principles stated above. Our divergence begins and ends solely on the issue of how just compensation is determined. While the undivided-fee rule is constitutional in most instances, I believe fairness dictates the "aggregate-of-interests" rule be used to determine just compensation when more than one estate is being condemned.

The majority cites several federal and state cases concluding the undivided-fee rule properly compensated the parties involved.[5] I agree that in most cases, the undivided-fee rule is constitutionally permissible because it produces the same valuation as would the aggregate-of-interests rule. The majority ignores, however, the premise that in unusual circumstances, the undivided-fee rule must be set aside to prevent an unfair and distorted result in favor of the condemnor.

In defense of the undivided-fee rule, the majority implies that commentators suggest the aggregate-of-interests rule "is based upon faulty valuation techniques."[6] The composition of the "commentators" consists of one sixteen-year-old law review article.[7] The majority does not cite a far more recent article concluding the undivided-fee rule is "conceptually flawed" in cases like the one now before the court.[8] Further, the article indicates the undivided-fee rule makes "little sense in some applications."[9]

The majority's contention notwithstanding, fair market value is "not the sole measure" of just compensation.[10] "Market value

---

[1] U.S. Const. amend. V.

[2] Nev. Const. art. 1, § 8, cl. 6.

[3] 1 Annals of Cong. 451-52 (Joseph Gales ed., 1789), *available at* http://memory.loc.gov/ammem/amlaw/lwac.html.

[4] *Id.*

[5] *See* majority opinion *ante* notes 13 and 28.

[6] *See* majority opinion *ante* p. 339.

[7] *See* majority opinion *ante* note 30.

[8] Gideon Kramer, *What to Do Until the Bulldozers Come? Precondemnation Planning for Landowners,* 27 Real Est. L.J. 47, 72 (1998).

[9] *Id.*

[10] *Urban Renewal Agcy. v. Iacometti,* 79 Nev. 113, 128 n.10, 379 P.2d 466, 473 n.10 (1963).

may, or may not, amount to just compensation."[11] This court has previously stated that " '[i]t is difficult to imagine an unjust compensation; but the word "just" is used evidently to intensify the meaning of the word "compensation;" to convey . . . that the [compensation] shall be real, substantial, full, ample; and no legislature can diminish by one jot the rotund expression of the constitution.' "[12] Despite these words, in most condemnation proceedings the " 'most probable price' " is the measure for compensation.[13] Value is determined "as if the government project that resulted in the taking was neither contemplated nor carried out."[14]

In addition to market value, "the court or jury [may] consider[ ] other elements that can fairly enter into the question of value and which an ordinarily prudent business man would consider before forming judgment in making a purchase."[15] One such consideration is "the rental value of the property condemned, as well as the actual rent which the property produces, because such elements of value are material in the determination of 'just compensation for the land taken.' "[16]

"Law is not a science, but is essentially empirical."[17] We must compensate an owner for the loss of property taken from him.[18] In unusual circumstances, this requires using the aggregate-of-interests formula to adequately reimburse an owner for the taking. In *Boston Chamber of Commerce v. Boston,* the United States Supreme Court rejected the undivided-fee rule precisely because it overlooks scenarios such as the instant case.[19] Apparently, the majority finds this unpersuasive.

[11]*Id.*

[12]*Id.* (quoting *Virginia and Truckee R. R. Co. v. Henry,* 8 Nev. 165, 171-72 (1873)).

[13]*County of Clark v. Buckwalter,* 115 Nev. 58, 61, 974 P.2d 1162, 1164 (1999) (quoting NRS 37.009(6)).

[14]*City of Sparks v. Armstrong,* 103 Nev. 619, 622, 748 P.2d 7, 9 (1987) (citing *County of Clark v. Alper,* 100 Nev. 382, 390, 685 P.2d 943, 948 (1984)).

[15]*State v. Shaddock,* 75 Nev. 392, 398, 344 P.2d 191, 194 (1959) (citing *In re Bainbridge-Unadilla Part 1, State Highway,* 5 N.Y.S.2d 988 (Chenango County Ct. 1938)).

[16]*Id.* at 398, 344 P.2d at 194 (quoting *Welch v. Tennessee Valley Authority,* 108 F.2d 95 (6th Cir. 1939)).

[17]Oliver Wendell Holmes, *Codes, and the Arrangement of the Law,* 5 Am. L. Rev. 1 (1870), *reprinted in* 44 Harv. L. Rev. 725, 728 (1931).

[18]*See Boston Chamber of Commerce v. Boston,* 217 U.S. 189, 195 (1910); *People v. Lynbar, Inc.,* 62 Cal. Rptr. 320, 327 (Ct. App. 1967); *Iacometti,* 79 Nev. at 128 n.10, 379 P.2d at 473 n.10; *Virginia and Truckee R. R. Co.,* 8 Nev. at 171-72.

[19]*Boston Chamber of Commerce,* 217 U.S. at 195.

As United States Supreme Court Justice Oliver Wendell Holmes stated, "[The Constitution] does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole."[20] Perhaps more importantly, Justice Holmes stated that the Constitution "deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained."[21] Finally, Justice Holmes points out that the Constitution "merely requires that an owner of property taken should be paid for what is taken from him."[22] In short, the Constitution mandates that a private property owner be placed in as good a position after a taking as if the property had not been taken.[23]

California appellate courts, relying on identical statutes, have supported both methods of valuation.[24] The California Court of Appeal, in County of Los Angeles v. American Savings & Loan Ass'n, discusses a hypothetical identical to the instant case.[25] The court theorizes that when using the undivided-fee rule, the sum of all the individual interests will equal what the value of the property would be with only one interest,[26] but notes that the assumption is not always true. Under the aggregate-of-interests rule, however, "the condemnor pays to the owner of each individual interest its fair market value regardless of whether the total payment is more or less than the value of the fee if it had been owned by one person."[27]

The aggregate-of-interests rule is therefore sometimes criticized as "giving the condemnor a windfall."[28] For example, a windfall occurs when a developer purchases several separate parcels that, when combined, result in land worth far more than the sum paid for the individual parcels.[29] The court in American Savings & Loan Ass'n explains, "[T]his frequently happens in the open market."[30] I agree; however, in this case we are not dealing with an "open market" transaction. This is a taking, and just compensation should be paid to all the interested parties.

---

[20]Id.

[21]Id.

[22]Id.

[23]Lynbar, Inc., 62 Cal. Rptr. at 327.

[24]County of Los Angeles v. American Savings & Loan Ass'n, 102 Cal. Rptr. 439, 443 (Ct. App. 1972) (citing Mike Talley, Note, The Undivided Fee Rule in California, 20 Hastings L.J. 717, 721 (1969)).

[25]Id. at 442-43.

[26]Id. at 442.

[27]Id.

[28]Id. at 443.

[29]Id.

[30]Id.

While the fairness of either rule may be debated, the majority insinuates I ignore or mistakenly construe NRS 37.115. The majority contends the language of the statute effectively codifies the undivided-fee rule. I disagree with that interpretation.

NRS 37.115 states: ''Where there are two or more estates or divided interests [in] property sought to be condemned, the plaintiff is entitled to have the amount of the award for such property first determined as between plaintiff and all defendants claiming any interest therein. The respective rights of such defendants in and to such award shall be determined by the court, jury, or master in a later and separate hearing in the same proceeding and the amount apportioned by order accordingly.'' This terminology is consistent with the idea of determining the interests of all parties, not just one. For example, the statute may be fairly applied for condemnation proceedings if there were two or more tenants in common who share fee ownership. The tenants in common would be entitled to divide the net proceeds based upon their fee ownership percentages. This is not the case, however, when there are separate estates such as leasehold interests or a life estate together with fee ownership. Thus, as in the *American Savings & Loan Ass'n* hypothetical, the aggregate value of the separate estates exceeds the fair market value of the fee interest valued by itself. Therefore, to withstand constitutional muster and award just compensation, the fee and leasehold estates must be appraised separately and their values aggregated. The interpretation of NRS 37.115 by the majority fails to provide for just compensation. I interpret NRS 37.115 to be a procedural rule.

Furthermore, the majority places much emphasis on the language of NRS 37.009(6), which states in part: '' 'Value' means the most probable price which a property would bring in a competitive and open market under the conditions of a fair sale.'' The statute continues, however, with the condition that ''[t]he buyer and seller are typically motivated.''[31]

''Typically motivated'' sellers are not those whose land is taken away by eminent domain. We do not have before us a willing seller. It is difficult for me to envision a normal transaction in which the seller is forced to sell his or her interest in the land whether he or she likes it or not. This key distinction prevents a forced sale from being a ''fair sale.''[32]

The majority confuses valuation with allocation. Under NRS 37.115, the district court conducts two hearings. At the first hearing, valuation is determined. The undivided-fee rule or the aggregate-of-interests rule may be used to determine the value of the property. The district judge, or the jury, considers expert tes-

---

[31]NRS 37.009(6)(b).

[32]NRS 37.009(6).

timony and evidence as to the value of the condemned property. After valuation, the condemnor is excused from the second proceeding, as no issue remains regarding the amount to be paid for the property. At the second hearing, however, additional evidence is heard regarding how the funds should be allocated.

Apparently, the majority assumes whatever determination of value made during the first hearing binds the court to that allocation at the second hearing. I disagree with that reasoning. The first hearing is solely to determine value, regardless of the method of valuation. The second hearing exists to allow the court, or the jury, to consider evidence as to how the entire sum should be allocated. The aggregate-of-interests rule does not interfere with the second hearing. To the contrary, the rule ensures the amount to be allocated is sufficient to compensate all interests justly.

We must remain true to the fundamental principles of the United States and Nevada Constitutions. " '[T]he law . . . must jealously guard the rights of individual owners.' "[33] We should not forget John Locke's principle that "governments were instituted to protect every person's property against the depredations of his neighbor."[34] It is unjust to take an individual property owner's land and refuse to properly compensate him for his loss. Respectfully, I would affirm the decision of the district court and allow the aggregate-of-interests rule to determine just compensation when more than one estate is being condemned.

---

[33]*Iacometti,* 79 Nev. at 128 n.10, 379 P.2d at 473 n.10 (quoting *Virginia and Truckee R. R. Co.,* 8 Nev. at 171).

[34]*Southwestern Ill. Development Auth. v. NCE,* 710 N.E.2d 896, 901 (Ill. App. Ct. 1999) (citing William B. Stoebuck, *A General Theory of Eminent Domain,* 47 Wash. L. Rev. 553, 595 (1972) (discussing Locke's principles of eminent domain)).